[No. 138. Decided January 26, 1891.]

PAULINE A. KNOX v. C. M. PARKER AND W. H. LANCASTER, *Copartners.*

REAL ESTATE AGENTS—REVOCATION OF AUTHORITY—COMMISSIONS.

Where the owner of real estate contracts with an agent for its sale, if there is no limit of time fixed between the parties, the agent's authority may be revoked at any time; and if, at the time of the revocation, the agent had a negotiation pending for the sale, which is afterward continued and consummated by the owner, the agent is entitled to his commission.

*Appeal from Superior Court, Spokane County.*

The facts are fully stated in the opinion.

*James B. Jones,* and *C. S. Voorhees,* for appellant.

*Griffitts, Moore & Feighan,* for appellees.

The opinion of the court was delivered by

STILES, J.—The appellees brought suit against the appellant for a real estate agent's commission, alleging that their compensation was to be $500, payable when they should effect a sale, and that they had not been paid. The answer was a general denial. From a judgment upon a verdict for the full sum demanded, this appeal was taken.

The undisputed facts would appear to be that the appellant was the owner of certain real estate in Spokane Falls, which she was desirous to sell, and on or about the 27th day of March, 1889, Lancaster, who was a member of a firm doing business in that city as real estate agents, called upon her, and solicited an employment as agent to sell her property. Appellant assented to the proposition, and agreed to pay $500 as a commission upon the sale. On the 16th day of April following, a sale of the property was made to one Edwards for $27,000. The disputed matters

on the part of the appellant were that she stipulated that the employment should continue but for three days, at the price of $26,250; that after that she would not sell at that price, but would ask a higher price, and would sell it herself; that at the expiration of about five days, no sale having been made or proposed, she notified appellees in writing that their employment had ceased, and that the sale made was without their assistance, or, if made through any assistance of theirs, it was without her knowledge, and they did nothing until after the expiration of the three days stipulated, and the service of notice that their employment was terminated. The appellees denied all these claims on the part of the appellant, and insisted that no time was mentioned in which the sale should be made, and no price was fixed; but that Lancaster, on his visit of solicitation, after he had secured appellant's agreement to pay him a commission, told her he had a person in view as a purchaser, Mr. Edwards, a person who was not on speaking terms with appellant, and whom Lancaster did not wish informed that his firm had anything to do with the sale; that appellant agreed to receive a proposition directly from Edwards, and to conduct the entire transaction herself, without Lancaster's apparent interference; that Lancaster proposed the matter to Edwards before the latter had ever had any conference with appellant; and that the subsequent sale was the result of his efforts—all of which, in turn, the appellant stoutly combatted. The appellees admitted the receipt of the notice of the termination of their employment, the destruction of the paper, and the substantial purport of its contents, as claimed by appellant, but maintained that it did not reach their hands until after their work was done, viz., the suggestion of the purchase to Edwards, which was followed up by the sale of the property to him.

This matter, with the question whether there was a

three days' limit to the contract for a commission, constituted the real issues which went to the jury; for the appellant, by her witness Edwards, showed that it was through Lancaster that he received the first suggestion that he might be able to purchase appellant's property, and was urged to see her in reference to it. The matter of the limited time for the sale was fairly submitted to the jury by the court by its instruction on that point. But it is contended that the charge on the subject of the notice contained serious error. It was as follows:

"But, if you believe that there was no limit upon this contract as to the time in which the sale should be made, then the plaintiff would have a reasonable time in which to effect a sale, virtually effected the sale, or if, before they had virtually performed the contract, she saw fit not to rescind the contract, because she would have no right to rescind the contract under any circumstances, but she would have a right to break it at any time, taking the lawful consequences, whatever that might be; so I instruct you that if, before they had performed the contract on their part, she sent this note discharging these men from that contract, that that would be a breach of it, and they could not recover in this action, because they have brought this action upon the theory that they performed the contract; that the contract was broken by her in failing to pay the money, and not in discharging or annulling the contract before they performed it. If she annulled the contract by this method I have indicated, before they virtually performed or substantially performed the contract on their part, why, then, they can recover in this action, although she sent the note, because she could not escape her liability after that by sending it.'

The action was brought upon an express contract to pay $500, if appellees should be instrumental in effecting a sale of appellant's property, the only difference between this case and one of ordinary real estate agent's employment being that the amount of the agent's compensation was fixed by the agreement, whereas, usually, the fee of the agent is a

percentage or a sum representing the value of the service. In this case, therefore, while the appellees, if there was no limit of time fixed between the parties, had full authority to go on and find a purchaser ready, able and willing to take the property, appellant could at any time revoke their authority, and put an end to their employment. If, moreover, a reasonable time should not have elapsed between the date of giving the authority and its revocation, the agent could usually recover his reasonable outlay and the value of his services in endeavoring to make a sale. And if, at the time of the revocation, the agent should have a pending treaty with a proposing purchaser, who afterwards, by a continuance of the same negotiations with the principal himself, actually buys the property, the agent would have fully earned his commission, since the principal in such a transaction cannot arbitrarily cut off the agent's authority, in the midst of what would be a successful agency, and then, although himself taking advantage of the agent's services, refuse him compensation. This was the law of the case, but it was not so given to the jury. While the language used, taking it altogether, is perhaps susceptible of a construction similar to the rule laid down above, it is very doubtful whether a jury, hearing it read as pronounced orally by the judge, would get any such idea of the law from it. It deals in very strong expressions, such as, "She would have no right to rescind the contract under any circumstances, but she would have a right to break it any time, taking the lawful consequences," etc. That part of the charge which informs the jury that the plaintiffs must recover upon the theory that they had fully performed the contract, and not that they had been discharged prematurely, the appellant cannot complain of. But the remainder of it, which told the jury that if when the note was sent the plaintiffs had "performed the contract on their part," they could recover in this ac-

tion, was misleading, since nowhere were the jury told the elements necessary to constitute the "performance" of the "contract" by the appellees, unless it is to be found in an earlier part of the charge, where the court said that the doing of "any service which was the moving or procuring cause in effecting the sale was sufficient to warrant a recovery." This latter clause is, however, just as objectionable, since there was coupled with it no explanation whatever of what was meant by "moving or procuring cause." The jury should have been told clearly that in order to entitle appellees to recover, if they found a sale had been made, the purchaser must have been induced to buy through their efforts in calling his attention to the property prior to the note of revocation. The jury would have understood that, but they would have been very likely to misinterpret what was said, especially when informed that the appellant "would have no right to rescind the contract under any circumstances." The error thus committed we consider sufficient ground for reversal.

The appellant, however, further claims that, by numerous turns of expression in the charge, the court transgressed the constitutional rule against charging juries in respect to matters of fact or commenting thereon, and strongly intimated to the jury his opinion that appellees should recover. The latter imputation we do not think sustained, but several unguarded expressions came very near sustaining the former one. As it is not necessary to this decision that we particularize them, we shall only make them a basis for remarking that our constitutional provision on this subject is very strong, and that it behooves the judges, when called upon to charge juries, to exercise very great caution to avoid error in this particular. In an oral charge the danger is especially great that some chance allusion to a controverted fact, as though it were

established by the evidence, may overturn what is really a just verdict. Take the following:

"There is some evidence here tending to show that, after the bargain was entered into, Mrs. Knox sent a note to the plaintiffs, upon the terms of which they were discharged from any further service in regard to the matter. There is some dispute about what this note contained. This is a matter for your determination alone as to what it did contain."

The language used in the first sentence, that there was "some evidence tending to show" the sending of a note, would seem to throw a doubt as to whether a note was sent or not; whereas, both parties agreed that the note had been sent and received. And, again, the words "after the bargain was entered into" leaves it doubtful whether the court meant by "bargain" the employment of appellees as agents, or the agreement of Edwards to buy. The attention of the jury was directed only to the ascertainment of what the note contained, coupled with a statement that, if appellees had performed their contract before it was sent, the appellant could not be allowed to escape liability at that time by any method of that kind. No question was submitted as to when, in relation to the "bargain," the note was sent, unless "bargain" meant the employment of the appellees merely; but a juror might well query whether the court were not assuming the time of sending the note as after the sale to Edwards had been agreed upon, thus telling them his views of that matter. Appellees contend here that the action of the court in allowing the appellant to testify as to the contents of the note, before it appeared that the original could not be produced, was error; and because of that error the court's entire instruction on the subject of the note was error, and not prejudicial to the appellant; but the matter is disposed of through the incorrectness of the first supposition, since Lancaster, in his testimony in chief for the appellees, not

only stated that he had received the note, but gave its contents, and showed that he had destroyed it, thus opening the way to appellant to contradict him as to the time of his reception of the note, and as to its contents, and thus also allowing her to avail herself of the legal effect of the note as fully as though she had pleaded it in her answer, no objection having been made to the introduction of this as an affirmative matter of defense, although not pleaded. The judgment will be reversed, and a new trial granted, with costs to appellant. It is so ordered.

ANDERS, C. J., and SCOTT and HOYT, JJ., concur.

DUNBAR, J. — I concur in the result, for the reasons stated, and for the further reason that the statement of the judge that "there was some evidence tending to show that a certain note has been sent by defendant," etc., was a violation of the rule in regard to judges commenting on the testimony. What the law governing the case is, is for the judge to state. What the evidence shows, or tends to show, is within the exclusive jurisdiction of the jury.