[No. 4718.  Decided September 21, 1904.]

THOMAS H. McCLEARY, *Respondent,* v. J. E. WILLIS, *Appellant.*[1]

BROKERS—COMMISSIONS—ACTION TO RECOVER SHARE OF—AGREE-MENT TO DIVIDE IN CONSIDERATION OF ASSISTANCE IN MAKING SALE —FINDING PURCHASER—DISCLOSING NAME—PLEADINGS—EVIDENCE —SUFFICIENCY.  In an action brought by one broker against another to recover one-half of the commission received by the defendant upon effecting a sale of real estate, agreed to be paid to the plaintiff if he would find a purchaser and assist in making the sale, a demurrer to the complaint and to the evidence for the reason that it was not alleged or proved that the plaintiff had in-

[1]Reported in 77 Pac. 1073.

troduced the purchaser or disclosed his name, is properly over-
ruled, since that was not essential where it appears that the
agreement was to divide commissions for "assisting" in making
the sale, and plaintiff found the purchaser, showed the property
to him, endeavored to make the sale, and was the procuring cause
in effecting the sale afterwards made by the defendant.

PLEADINGS—AMENDMENT.    Where originally the complaint
had alleged defendant's agency in 1900, a trial amendment to
state the same fact was proper, under Bal. Code, § 4953.

COSTS.    Error will not be presumed in the allowance of costs
for witness fees and copies of documents where the record fails
to show that appellant suffered any prejudice.

Appeal from a judgment of the superior court for Lewis
county, Irwin, J., entered December 5, 1902, upon the
verdict of a jury rendered in favor of plaintiff in an action
for a broker's commission. Affirmed.

*J. E. Willis* and *Millett & Harmon,* for appellant.

*Forney & Ponder,* for respondent.

PER CURIAM.—Action to recover compensation for ser-
vices rendered as a broker, brought by Thomas H. Mc-
Cleary against J. E. Willis in the superior court of Lewis
county. The cause came on for trial before the lower court
and a jury. A verdict was rendered in plaintiff's favor for
$150. The defendant in due time filed his motion for a
new trial on statutory grounds. This motion was over-
ruled "upon condition that plaintiff remit the amount of
said verdict in excess of $143.75." Plaintiff consenting,
judgment for the amount last named, with interest from
said date, and costs, was entered on the 5th day of Decem-
ber, 1902. Defendant appeals from this judgment. The
complaint, omitting title of cause, is as follows:

"The plaintiff complains of the defendant, and for cause
of action alleges: (1) That the plaintiff now is, and at
all times herein mentioned was, engaged in the real estate
business in Centralia, Lewis county, Washington. (2)

That defendant during the years 1900, 1901, and 1902 was the agent for the United Trust Limited for the sale of a tract of land known as the Hoss place, near Centralia, Lewis county, Washington, being the north half of the Sidney S. Ford donation land claim. That defendant on or about the month of September, 1900, agreed with the plaintiff that if plaintiff would assist defendant in finding a purchaser for said tract of land he, defendant, would pay to plaintiff one half of the commissions he would receive from making a sale of said premises. (3) That the plaintiff, relying upon said agreement, did thereupon assist the defendant in procuring a purchaser for said land, to wit, one C. A. Ives and his wife, Katie Ives, who on, to wit, the 22nd day of May, 1902, purchased the premises aforesaid. (4) Plaintiff avers, according to his best knowledge, information and belief that defendant, on to wit, the 22nd day of May, 1902, received a large sum of money as commission for said sale of said land, to wit, the sum of seven hundred and fifty dollars. (5) That defendant neglects and refuses to pay to plaintiff one half of said commission or any sum, and there is now due and owing plaintiff from the defendant by reason of said agreement the sum of three hundred and seventy-five dollars, with interest thereon from and after May 22, 1902. Wherefore plaintiff prays for judgment against the defendant for the sum of three hundred and seventy-five dollars, with interest thereon at the legal rate from and after May 22, 1902, and for his costs herein."

Appellant made his motion in the lower court to require respondent to make paragraph two of the above complaint more definite and certain, in order "to show the time and place of making the agreement alleged to have taken place between the plaintiff and defendant," and to show whether said agreement was a "verbal agreement or in writing." This motion was overruled, and appellant excepted. The amended answer of appellant denies each and every allegation in paragraphs two and three of the complaint,

". . . except that he admits that said C. A. Ives and his wife, Katie Ives, have entered into a contract to purchase the premises described in paragraph two of plaintiff's complaint. That said defendant further admits and alleges that, since the service upon plaintiff of the original answer in this cause, to wit, on the 29th day of July, 1902, the United Trust Limited, a corporation, has conveyed by deed the lands and premises referred to and described in plaintiff's complaint at said paragraph two, to the said C. A. Ives, and his wife, Katie Ives."

This answer further denies each and every allegation in paragraph four of the above complaint, except appellant admits that he received two hundred eighty-seven and 50-100 dollars commission in negotiating such sale, that he refuses to pay respondent any part thereof, and denies all indebtedness to him on account of the aforesaid transaction. There is certain matter alleged in what purports to be appellant's further defense, which relates to his version of the above transaction. This matter is evidentiary in character, and pertinent to appellant's denials of the allegations in the complaint. The reply puts in issue the allegations of affirmative matter contained in this answer.

The real estate mentioned in the complaint is situated a few miles from Centralia, in Lewis county. Appellant is an attorney at law, and was located, at the above times, at Chehalis. Some time prior to the alleged transactions in the complaint, appellant, as the attorney of the United Trust Company, Limited, foreclosed a mortgage on this realty and obtained the title thereto for this company. Appellant, having been called as a witness for respondent, testified: "I only had this land for sale in this way: when I got a purchaser I was to submit the offer. I could not make any contract." Respondent's testimony tended to show that, some time during the summer of 1900, appel-

lant and respondent had their first conversation with reference to the sale of the above realty, using this language:

"Well, first I met Mr. Willis in Chehalis, I think on the street. I told him I thought I could assist him in finding a purchaser for the old Hoss place. Mr. Willis said if I would he would divide the commissions with me. I told him, 'All right,'. I would do it, and, after some further talk about the matter, we parted."

He further testified that Willis fixed the price at $5,400; that witness took several parties out to see this place at different times; that some time in November, 1901, Allen Ives, father of C. A. Ives, came to witness' house, told respondent that his son Charley, who was then living in California, intended to come to Lewis county, and, "he wanted me to be on the lookout for a place for him. I then told him about the Hoss place, being the best place I know of for the money. I told him his son could buy it for $5,400." Thereafter Allen Ives came to the office of respondent several different times to talk about this place. He wanted witness to show the son this property when he arrived. When the son, C. A. Ives, arrived, respondent procured a rig, with which he took young Ives and a companion out to see this realty. Ives said he liked the place better than any that he had yet seen, and that he thought he would take it at the price of $5,400, if he could get satisfactory terms on payments. Respondent also testified that he told Mr. Ives that the attorney in Chehalis would fix such terms, and that he would go and see him, that respondent thought he told Ives the name of the attorney was Mr. Willis. In continuation of respondent's testimony, he said:

"Well, we started on back, and Mr. Ives said, 'I have seen a place advertised in the newspaper, near Seattle, that looks cheap on paper, I will go up and see that, and in the meantime you go to Chehalis, and get the best terms on

that place. You may say to him that I will make a substantial payment on the place and secure the rest.' I told him, 'All right.' . . . I came right to Chehalis to see Mr. Willis, I told him about having a buyer for the 'Hoss place' and I thought surely we would be able to make a sale. Q. Did you tell Mr. Willis who the buyer was? A. I think not, I don't remember that anything was said about that. Willis picked up a letter, which he said was from McMaster & Birrell of Portland, to the effect that the price of this land had been raised to $5,500—net to the owner, and that we would have to sell it for $5,800 or possibly for $5,750 so that we could make a commission of $300, or any way $250, out of the sale. . . . I told Mr. Willis that I was sorry that the raise had been made in the price of the land, as it might knock out the sale, but that I would go back and do everything I could and Mr. Willis said all right. I told Allen Ives the next morning about the raise in the price of the land, did not see C. A. Ives till after he bought the land. He came to Chehalis the next day, I think with his father, and bought the place from Mr. Willis."

This was about February 12, 1902. It was admitted at the trial that, at or about this date, C. A. and Katie Ives entered into a written contract to purchase this land of the United Trust Company, Limited, for the consideration of $5,750. Appellant admitted that he received $287.50 commission for negotiating this sale, as alleged in the answer. Respondent, on being recalled in his own behalf, swore that, at the time of the above conversation with Willis, when he learned about the raise in the price of the land, Willis said, "that if we made $300, he would divide it with me, and I should get $150, and he the same; or if we made $250, then we would get $125 each." The foregoing statement comprises substantially respondent's version of the transaction, as the same appears in the record. At the trial, when respondent rested, appellant demurred to the com-

plaint and the evidence, and moved to dismiss the action
for the following reasons:

"(1)    Because it appears upon the face of the plaintiff's
complaint that the complaint does not state facts sufficient
to constitute a cause of action, inasmuch as it does not ap-
pear that the plaintiff communicated to the defendant
knowledge of his negotiations for the sale of the premises.
(2) That the defendant challenges the sufficiency of the
evidence adduced by plaintiff at the time plaintiff rested
his cause, inasmuch as the plaintiff has failed to prove that
defendant at any time mentioned in the complaint, or at
all, was the agent of the United Trust, Limited, and be-
cause said evidence does not show that plaintiff in any
manner assisted defendant in making a sale of the premises
described in plaintiff's complaint."

The lower court overruled the demurrer and motion to dis-
miss, and appellant excepted.

On nearly all of the material points involved, the testi-
mony of appellant and his witnesses is in direct conflict
with the evidence adduced in behalf of respondent.    It is
admitted, however, that Allen Ives and his son's attention
was first directed to this land by respondent.    Both of
these parties testified that respondent represented himself
as the sole agent for the sale of this land; that they first
learned through assessor Guin that Mr. Willis had the
handling of it.    Appellant testified, that during the sum-
mer of 1900, and about January 1902, respondent asked
appellant what there would be in it, or words to that effect,
if he found a purchaser for this Hoss place; that appellant
answered, if respondent would bring a purchaser to his of-
fice who made an acceptable offer, appellant "would do
the fair thing" by him.    Mr. Allen Ives testified concern-
ing the alleged conversation between respondent and him-
self, while his son was in Seattle, as follows:

"I went to his office and was told he had gone to Che-
halis, and would not be back until night; and I went to

his house again the next morning, and asked him what he had done. He said he hadn't done anything, but that he had gone to Chehalis, and while there had telephoned to Portland to these parties, and that they had risen on their price to $5,800, and seven per cent on back payment, instead of six per cent. And I said 'I will throw the whole thing aside.'"

Respondent denied, in rebuttal, that he told either Allen or C. A. Ives that he telegraphed or telephoned to Portland while in Chehalis. During the progress of the trial, the court below allowed respondent, on his verbal motion, to amend his complaint, so that it might appear by allegation that appellant was the agent of the United Trust Company in the year 1900, as well as during the years 1901 and 1902, as this pleading originally stood. Appellant excepted. After hearing the evidence and arguments of counsel, the cause was submitted to the jury under instructions of the trial court, and a verdict returned as above mentioned.

It is assigned that the lower court erred in overruling appellant's demurrer to the complaint and the evidence, and in refusing to dismiss the action. In support of the contention that the complaint does not state facts sufficient to constitute a cause of action, appellant's counsel in their brief make the following quotation from the opinion delivered by this court in *Penter v. Staight*, 1 Wash. 365, 25 Pac. 469.

"This was an action for a real estate agent's commission, and the complaint alleges that certain property was placed in the hands of plaintiffs by defendant for sale at a certain price, and the plaintiffs undertook to use their best efforts to find a purchaser at the price named, for which, they being successful, they were to receive the usual commission, alleged to be five per cent; and to charge the defendant,

the complaint also alleged that plaintiffs had found a pur-
chaser at the price named, and completed the bargain with
the purchaser for the sale of the same. But there was no
allegation that the plaintiffs had ever communicated knowl-
edge of their action to the defendant, or that he had carried
out the arrangement they had made for the sale, or had
refused to carry it out after notice of the arrangement;
and in these particulars, at least, it was fatally wanting."

Section 401, Pierce's Code; § 4931, Bal. Code, provides
that, "In the construction of a pleading, for the purpose
of determining its effect, its allegations shall be liberally
construed, with a view to substantial justice between the
parties." It is significant, in this connection, that appel-
lant's objections to the complaint were first urged at the
trial; that while he did, in the lower court, make a motion-
to require respondent to state whether the alleged contract
of employment was in writing or verbal, no motion was
interposed requiring respondent to state the terms of such
employment more definitely than they were stated in the
first instance. The dissimilarity between the allegations
found in the complaint in the case of *Penter v. Staight,
supra,* and the complaint in the present controversy is sig-
nificant. In the *Penter* case, the action in part was
founded upon a contract to pay a commission to plaintiffs,
as brokers, for making a sale of the owner's real estate, at
the instance of the latter party. The complaint therein
was not only defective for failure to allege want of knowl-
edge on the part of the owner, regarding the brokers' acts
in the premises, but there were no substantive allegations
in the pleading showing that defendant had carried out the
arrangement the brokers had made for the sale of the real
estate involved in such controversy, "or had refused to
carry it out after notice of the arrangement." We think,

under favor of this rule of liberal interpretation, that the complaint states sufficient facts to show a liability, on the part of appellant, to respondent, in consideration of services rendered by McCleary to Willis; that, under such contract of employment, as alleged, the respondent was to assist appellant in procuring a purchaser for the above real estate; that having rendered such assistance to appellant, respondent was entitled to remuneration for his services.

The vital question in this whole controversy is whether there was competent evidence to sustain the verdict of the jury. In this connection we make the following quotation from appellant's brief:

"To be frank, it is upon the testimony of the respondent himself, not upon the testimony of any other witness, that we ask this court to reverse the judgment of the court below. Certainly the respondent's own evidence does not show that he 'produced' a buyer 'ready and willing' to buy the property. Nor does it show that he 'communicated' to appellant 'knowledge' of his dealings with Ives."

In the case of *Bertelson v. Hoffman, ante* p. 459, 77 Pac. 801, which was an action to recover a broker's commission from the owner of the real estate, wherein the sale was not consummated because the owner refused to comply with his part of the contract made with his broker, this court held that the mere withholding of the intended purchaser's name from the owner, on the part of the broker, did not prejudice the plaintiff in that action, as the owner did not request that the identity of the purchaser be made known to him; and that it did not appear that the owner suffered any damage or injury by reason of such concealment. *Butler v. Kennard,* 23 Neb. 357, 36 N. W. 579, was an action brought by the broker, Butler, against Kennard, the owner, to recover a commission where the sale was com-

pleted between the owner and the purchaser. The following language occurs in the opinion of the court:

"It is a well established rule in this, as well as other, states, that where a broker is employed to sell real estate, it is not necessary that the whole contract should be completed alone by him, in order to entitle him to his commission. But if, through his instrumentality, the purchaser and owner are brought in contact, and a sale is made through the instrumentality of the agent, he is entitled to his compensation; and this without reference to whether the owner, at the time the sale was perfected, had knowledge of the fact that he was making the sale, through such instrumentality."

The question in such cases is whether the broker was the procuring cause in bringing about the sale between the owner and customer. *Lloyd v. Matthews,* 51 N. Y. 124; *Lunney v. Healey,* 56 Neb. 313, 76 N. W. 558, 44 L. R. A. 593, and note.

It must be borne in mind that, under respondent's allegations and proofs, he did not undertake to procure a purchaser for the sale of this realty, but only to assist in so doing; that this action at bar is based on a special contract of employment entered into between an agent or a representative of the owner (the Trust Company) and this respondent, who is only suing the agent, Willis, for one-half of the commission received by him from the United Trust Company. In its essence, this is a controversy between brokers or agents, over a division of commissions received by one of these parties to this transaction. The jury evidently, by its verdict, affirmed that Mr. McCleary was the procuring cause in producing a purchaser for this land, and that he assisted in finding a purchaser or purchasers therefor. We believe there is competent evidence in the record to sustain such finding, and that the appellant, having re-

ceived the fruits of respondent's labors, should respond in accordance with the contract as alleged. It does not lie with appellant to deny that he was the authorized agent or representative of the United Trust Company for the purposes of selling this land. The company, by contracting with, and conveying this real estate to, Ives, ratified all the acts of appellant as its agent in the above transaction. The fact that appellant communicated with certain financial agents of this company in Portland, Oregon, is a matter of no significance, as far as the rights of respondent are concerned in this controversy. The Ives' could not arbitrarily have put an end to respondent's contract of employment, and then go ahead and make an agreement for the purchase of this land with appellant, to the prejudice of respondent, whose acts at that time had become, and were, an integral part of the foregoing transaction. Both father and son swore that assessor Guin told the elder Ives about appellant having this realty for sale as agent, which was the first time that either the father or son had ever heard the name of Mr. Willis mentioned in connection with this real estate. If this be true, in the light of the testimony in respondent's behalf, we think that there was sufficient evidence to show that respondent did assist appellant in making a sale of such land, and therefore was entitled to recover, under the contract of employment set forth in the complaint.

The trial court committed no error in assessing the amount of respondent's recovery. It was consistent with his proofs. The granting of leave to amend the complaint at the trial, to which we have heretofore referred, was perfectly proper under § 4953, Bal. Code.

The appellant contends that the lower court erred in giving certain instructions to the jury, and in refusing to

instruct as requested by appellant. The instructions given, of which appellant complains, are in accord with our conclusions heretofore declared with regard to the sufficiency of respondent's allegations, and the evidence adduced in support thereof. The request refused was properly denied; that part embraced in the language following: "and unless the person claiming the commission finds such a purchaser, and communicates the fact to the other party at the time, he cannot recover," is objectionable, and contrary to the legal principles heretofore announced in this opinion.

Appellant further complains that the lower court erred in allowing two items in respondent's cost bill to be taxed against him—$4.80 for attendance and mileage of D. B. Rees, witness for respondent, subpœnaed but not called upon to testify at the trial, and $3 for copies of documents. Error will not be presumed; it must appear affirmatively. From the meager showing appearing in the transcript, we are not prepared to hold that appellant suffered any prejudice by reason of such ruling with respect to the taxation of these items of costs. *Ivall v. Willis,* 17 Wash. 647, 50 Pac. 467; *New Whatcom v. Bellingham Bay Imp. Co.,* 16 Wash. 135, 47 Pac. 236.

No reversible error appearing in the record, the judgment of the superior court must be affirmed, and it is so ordered.