[No. 5333.   Decided May 1, 1905.]

JOHN H. NORRIS et al., Appellants, v. JOHN BYRNE et al., Respondents.[1]

BROKERS—ACTION FOR COMMISSIONS—PROCURING CAUSE—EVIDENCE—SUFFICIENCY.  Brokers are entitled to their commissions on a sale of real estate, where it appears that there was an understanding between the two joint owners, B and R, that either was authorized to make a sale at $9,000 net, that R agreed with the brokers that they could sell at such figure, that the brokers found a purchaser who agreed to buy at $9,500, notified R that they would make the sale with the understanding that they should have the $500 as commissions, and asked for thirty days' time to close the deal, that B objected to giving time, whereupon the brokers gave the name of the purchaser and the question of time became a matter of direct negotiation between B and the purchaser, and was fixed at three days, within which time the deal was closed at $9,500, B at that time repudiating the agreement with the brokers, and the brokers notifying the owners that they would be held for the commissions before the deal was closed; since the brokers were the procuring cause, upon terms satisfactory to the owners, who, in closing up a sale practically consummated by the brokers, reaped the benefit of their services, and are not in a position to deny liability for the commissions.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered April 18, 1904, upon findings in favor of the defendants, after a trial before the court without a jury, dismissing on the merits an action to recover a broker's commission.   Reversed.

[1]Reported in 80 Pac. 808.

*Vance & Mitchell,* for appellants.

*Troy & Falknor,* for respondents.

PER CURIAM.—On the 17th day of July, 1903, respondents were the owners of certain real estate, situated in the city of Olympia, known as the "Woodruff Block." At said time, and for some time prior thereto, and ever since, these appellants were engaged in the real estate business in the city of Olympia. On or about said date, one Schmidt had a conversation with appellants relative to his making an investment in Olympia real estate, in a sum approximating $10,000, for and on behalf of his sister-in-law, one Henrietta Speckert. In this conversation appellants called his attention to the Woodruff property, owned by these respondents.

Subsequently thereto, appellant Norris called upon respondent H. G. Richardson, and asked him if said property was for sale and, if so, at what price. Richardson answered that they would sell it for $9,000. Norris expressed the idea that this was a high price, and retired. Again, on the same or the following day, Norris called on Richardson and resumed the conversation relative to said property, and asked Richardson if a commission would be allowed at that figure. Richardson said, "No," that it should be $9,000 net. Some other conversation followed, and it was understood between them that appellants should have such an amount as they could obtain for the property over and above $9,000.

Appellants again took up the matter with Schmidt, recommending the purchase of the property by him. They showed the property to him, and together they examined the same. As a result of this examination, and their efforts to induce him to purchase, he agreed to buy it for $9,500, for his said sister-in-law. He was able and ready to pay

38-38 WASH.

the money, but desired time to communicate with her, if possible. Norris told Richardson that they had a prospective purchaser, and that they would charge said buyer $9,500, and that he—Richardson—should see that the commission was paid them. To this Richardson said, "All right." Norris then asked as to how much time he could have to close the deal, as some correspondence would be necessary. Richardson said that he would see respondent John Byrne, his co-owner, about this.

Richardson came to the office of the appellants and had a conversation with them relative to the time to be given, and from their office telephoned to Mr. Byrne, telling the latter that they could sell the property for $9,000 net, and asking if thirty days could be allowed within which to close the deal. Byrne answered, "No," that no time whatever would be allowed at that figure. Richardson then told appellant that he would go and see Mr. Byrne and see what could be done as to the matter of allowing time. Appellants told Mr. Richardson that, in order to show their good faith, they would give him the name of the purchaser, and thereupon told him that said purchaser was Mr. Schmidt, a prominent and well-known citizen, of ample financial means, and that he was purchasing said property for his sister-in-law in California, and that he desired some little time to correspond by letter, or at least to communicate by telegraph.

Richardson then went to see Mr. Byrne, and talked the matter over with the latter, and told him who the purchaser was, and all about the conversations which he had had with appellants. Thereafter, Schmidt called at appellants' office and, upon being told that Mr. Byrne declined to give thirty days' time, suggested that he go himself and see Mr. Byrne, as he knew him well and thought that he could arrange for the necessary time. To this appellants as-

sented, and Schmidt called Byrne up over the telephone. In this conversation between Byrne and Schmidt, Byrne offered to call upon Schmidt relative to the matter, and did so, and at this time, or in one of their conversations within the next few days, a bargain was concluded between Byrne and Schmidt, by which Schmidt was given an option of buying the property within three days at $9,500. Within the three days, Schmidt notified Byrne that he would take the property at said price. The money was paid and the deeds were delivered several days after the expiration of the three days mentioned.

Mr. Byrne testified that, before he consummated the deal with Schmidt, he told the latter that appellants were no longer in the matter, and there was to be no question about commissions involved. Richardson testifies that there was an understanding between him and Byrne that the property could be sold for $9,000 net. Byrne claims that this was true only with reference to certain Shelton parties, with whom they had been negotiating for some time prior to the sale of the property, and claims that he never authorized Richardson to make any sale of the property, in so far as his portion thereof was concerned. Richardson claims that, when appellants asked for thirty days' time within which to correspond and consummate the deal, they were told by him that the same could not be granted, and that "the transaction would have to be off." It appears that there was, and had been theretofore, existing some ill feeling between one of appellants and one of respondents. The case was tried in the lower court before the judge without a jury. Findings of fact and conclusions of law were made and entered by the trial judge, and thereupon a judgment of dismissal in favor of the respondents was made and entered. From this judgment plaintiffs appeal to this court.

Under principles announced in similar cases by this court, and by many other courts, we think the conclusion reached by the honorable trial judge was erroneous. *Carstens v. McReavy,* 1 Wash. 359, 25 Pac. 471; *Barnes v. German Sav. etc. Soc.,* 21 Wash. 450, 58 Pac. 569; *Hawley v. Maddocks,* 25 Wash. 299, 65 Pac. 544; *Jones v. Eilenfeldt,* 28 Wash. 687, 69 Pac. 368; *McCleary v. Willis,* 35 Wash. 676, 77 Pac. 1073; *Elmendorf v. Golden,* 37 Wash. 664, 80 Pac. 264.

In *Carstens v. McReavy, supra,* this court said:

"Courts almost unanimously unite in holding that in case of an ordinary employment to sell, once he has procured a party able and willing to buy, upon the terms demanded by his principal, and has notified him of the purchaser's readiness to buy, the agent's work is ended and he is entitled to his commission. It is not his duty to procure a contract or make one, and he is not in default if he fails to do either."

In *McCleary v. Willis, supra,* this court, among other things said:

". . . the appellant, having received the fruits of respondent's labors, should respond in accordance with the contract as alleged. . . . The company, by contracting with, and conveying this real estate to, Ives, ratified all the acts of appellant as its agent in the above transaction."

In the case at bar, respondents having consummated a sale to the buyer produced by appellants, and at the same amount he had offered to pay through appellants when they showed him the property, it would seem that said respondents should not be heard to say that they were under no obligations to pay commission. In *Jones v. Eilenfeldt, supra,* this court said:

"To entitle a real estate agent to recover . . . the agent must find a purchaser able and willing to purchase

the property upon terms under which he is authorized to make a sale, or upon terms satisfactory to the owner, and one who is ready and willing to enter into a valid contract of purchase."

In the case at bar, appellants produced a buyer able, ready, and willing to buy "*upon terms satisfactory*" to the owners. He did so buy, and paid the cash.

An examination of the evidence in this case leaves no question but that appellants were the procuring cause of this sale. Respondents were willing to sell this property at $9,000 net. Appellants notified respondents that they had a purchaser ready, able, and willing to buy said property at $9,500, and that they could and would sell it to the said purchaser for said sum, with the understanding that they were to have the $500 as their commission. There was some difficulty on the question of time allowed for the consummation of the deal. Respondents desired it to be a cash transaction; but having learned from appellants the name of their prospective purchaser, they took up the matter directly with such purchaser, and they allowed him a certain amount of time within which to conclude the deal.

Appellants called the purchaser's attention to the property. They took him to the property, and went through the same, showing it to him and advancing such reasons as they could to induce him to purchase the same. He agreed before seeing respondents to buy it, through appellants, at the price of $9,500, which was the net price stated by Richardson, plus the $500 added by appellants for their commission. The question of time, not being definitely agreed upon, became a matter of negotiation between Mr. Byrne and Mr. Schmidt, and resulted in an arrangement by which Schmidt was given three days within which to give a definite answer. Additional time was subsequently allowed within which to pay the money and receive the deeds. Before the money was paid or the deeds delivered,

appellants having heard that respondents did not intend to recognize them at all in the transaction, notified the latter that they would claim their commission.    Hence, respondents closed the deal with Schmidt, knowing that appellants were claiming to be entitled to a commission on said deal.

The conclusion of the deal between Schmidt and respondents seems to have been managed, on the part of respondents, entirely by Byrne, the other respondents executing the deeds in accordance with the arrangement and agreement which he made.    This fact, taken together with the testimony of Richardson, and all of the evidence in the case, tends strongly to show that there was an understanding between respondents that either Mr. Byrne or Mr. Richardson was authorized to make a deal with reference to the sale of this property.    The conversation had by Norris and Richardson undoubtedly constituted a contract between him and appellants, authorizing the latter to sell this property for $9,000 or more, the excess to be appellants' commission.    The conduct of Mr. Byrne in taking up the matter immediately afterwards with the purchaser, whom appellants had secured and who was then negotiating with them for the property, and the subsequent closing of the deal, already practically consummated with said purchaser, which all the respondents ratified by conveying the property and receiving the money, in our opinion establishes a condition of facts justifying these appellants in the recovery of a commission.    Respondents having reaped the benefit of appellants' information and services in the matter, are not in a position to deny liability for the commission asked.

The judgment of the honorable superior court is reversed, and the cause remanded, with instructions to enter a judgment in favor of appellants and against respondents in the sum of $500 and costs.