[No. 17502. Department One. February 7, 1923.]

ORTIS HAMILTON, *Appellant*, v. C. L. BEST GAS TRACTION COMPANY, *Respondent*.[1]

PRINCIPAL AND AGENT (4)—AGREEMENTS FOR APPOINTMENT OF AGENT. Although a written agreement between a manufacturer and a dealer providing for the sale of tractors and resales in a certain territory in this state, and the performance of certain services in connection therewith, may not have constituted an agency contract, an agency contract is created, where there was a subsequent oral agreement that the contract should apply to Idaho and an oral request and demand that the dealer solicit and promote sales in Idaho.

CONTRACTS (4)—PRINCIPAL AND AGENT (23)—COMPENSATION—MUTUALITY OF AGREEMENT. Where a written and oral agreement and request to plaintiff to solicit sales in Idaho consituted an agency agreement as to two tractors, and plaintiff was the procuring cause of the sales thereafter consummated, he was entitled to his compensation, and the contract being fully executed, liability can not be denied on the ground of want of mutuality.

CORPORATIONS (121)—OFFICERS AND AGENTS — REMOVAL. Rem. Comp. Stat., § 3809, subds. 4 and 5, authorizing corporations to appoint and remove agents at will, has no bearing upon an agent's action to recover compensation for services rendered before termination of the employment.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered May 24, 1922, upon sustaining a demurrer to the complaint, dismissing an action on contract, tried to the court. Reversed.

*McCarthy, Edge & Lantz*, for appellant.

*Burcham & Blair* and *Fitzgerald, Abbott & Beardsley*, for respondent.

PARKER, J.—The plaintiff, Hamilton, seeks recovery of compensation from the defendant, traction com-

[1]Reported in 212 Pac. 1077.

pany, which he claims to have earned in pursuance of an agreement with defendant in rendering service which, in effect, became the procuring cause of a sale of tractors made by the defendant. The plaintiff's complaint was demurred to by the defendant upon the sole ground that "it does not state facts sufficient to constitute a cause of action," which demurrer was sustained by the superior court. Thereupon plaintiff elected to stand upon his complaint and not plead further. A judgment of dismissal was accordingly rendered against him, from which he has appealed to this court.

The complaint is long and contains allegations of facts in such detail as to suggest the pleading of evidence to a considerable extent. However, the foundation of plaintiff's right of recovery, if he has such right, seemingly justifies the somewhat lengthy, detailed narration of facts therein contained, which, so far as necessary to be here noticed, may be summarized as follows: The plaintiff, at all times in question, was engaged in the tractor and automobile business at Spokane, in this state, under the name of Rochester Motors Company. The defendant is a corporation doing business in Spokane, this state, but having its principal place of business at San Leandro, California. On September 12, 1919, the plaintiff and defendant entered into a written agreement, which, in so far as we need here notice its terms, reads as follows:

"This agreement made and entered into this 12th day of September, 1919, by and between C. L. Best Gas Traction Company, the party of the first part, hereinafter called the Manufacturer, and Rochester Motors Co. of Spokane, Washington, the party of the second part, hereinafter called the Purchaser, as follows:

"THE MANUFACTURER AGREES:

"1. To sell to the Purchaser new traction engines for cash, at a discount of seventeen one half per cent (17½%) from the Standard List Price in effect at the time an order is accepted, f. o. b. San Leandro, California, (provided, however, that the Manufacturer shall have the right to reject any order or specification, or part thereof, for goods from the Purchaser, as it may deem fit.)

"4. To give Purchaser the exclusive right in the following territory: Spokane, Whitman, Adams, Grant, Douglas, Lincoln, Okanogan, Ferry, Pend Oreille, Stevens counties, State of Washington. The Manufacturer may make sales in said territory of rebuilt or second hand tractors and on any such sales made no discount or commission will be allowed.

"THE PURCHASER AGREES:

"1. To pay the Manufacturer at the time of the placing of an order for tractors such deposit as the Manufacturer may require, and to pay the balance in full upon presentation of sight draft attached to bill of lading.

"3. The Purchaser agrees to waive commission or discount on any sale or trade of a tractor in said territory if said sale or trade is refused by Purchaser but is later made by Manufacturer.

"4. Not to sell tractors purchased of the Manufacturer outside of said territory.

"5. Not to sell any tractors other than those of the Manufacturer.

"6. Not to sell, nor advertise for sale any new tractors of Manufacturers for more or less than the current retail list, price plus freight and reasonable handling charges.

"7. To assume and discharge the obligations of attention and service to purchasers of said tractors, and to maintain at his own expense, a complete service department, which shall unload and start Best Traction engines sold within Purchaser's territory, and counsel

and advise users in the operation of said tractors, giv-- ing user three days free service, from date of delivery, of an expert mechanic, and make any alterations, ad- justments and repairs that may be found necessary, and in case of complaint, to go promptly to the com- plainant and adjust the difficulty. Should the Pur- chaser neglect or refuse or be unable to furnish such service, the Manufacturer may, at its option, furnish such service and charge the same to Purchaser's ac- count.

"8. To give in writing to the Manufacturer, at least once each month, the names and addresses of all purchasers of Best Tractors in his territory, and lo- cation of tractors, together with the serial number of the same.

"IT IS MUTUALLY AGREED:

"5. That the Purchaser is not the agent of, nor authorized by the Manufacturer to make any con- tracts or guarantees on behalf of the Manufacturer.

"6. This contract may be cancelled by either Manu- facturer or Purchaser by giving written notice to the other by letter duly posted, addressed to the last known address of either party. . . ."

A short time after the making of this written agree- ment, a representative of the defendant, authorized to act for it, "orally agreed with plaintiff, in Spokane, Washington, that the terms of said written agreement would be effective in the state of Idaho, in territory unassigned to others for the sale of said trac- tors. . . . At or about the time said oral agree- ment was made, and as a part thereof, plaintiff, acting through its said representative, orally requested and demanded that plaintiff diligently solicit and otherwise promote the sale of said tractors in the said territory." The plaintiff did thereafter diligently solicit and other- wise promote the sale of defendant's tractors in the otherwise unassigned territory in Idaho. Defendant,

at all times in question, knew that plaintiff was so act-
ing, and defendant orally and by correspondence re-
peatedly authorized and encouraged plaintiff to so act,
and also ratified his acts in that behalf.  Correspond-
ence, consisting of some twenty letters between plain-
tiff and defendant during the months of January, Feb-
ruary, March and April, 1920, so evidencing defend-
ant's authorization and ratification of plaintiff's acts
looking to sales of tractors in Idaho, are attached to
and made a part of the complaint.  At all times in
question the Potlatch Lumber Company of Potlatch,
Idaho, was a subsidiary corporation of the Allied Wey-
erhauser Company, the latter having a place of busi-
ness in Spokane.  The Potlatch Company made pur-
chase of its tractors upon the request and recommen-
dation of the Weyerhauser Company.  Prior to No-
vember 11, 1919, plaintiff solicited the Weyerhau-
ser and Potlatch Companies to purchase tractors of
defendant's manufacture.  Plaintiff's efforts in that
behalf were continued by his expenditure of time and
money until April, 1920.

"As a direct result of plaintiff's said efforts and of
said request, direction and recommendation, said Pot-
latch Lumber Company and said Weyerhauser Com-
pany purchased two of said tractors, as hereinafter
alleged, the list price of each of said tractors being
$6,250.  .  .  .    About the 19th day of April,
1921, defendant, acting through its officers and
agents,  .  .  .    while pretending to assist plaintiff in
concluding negotiations for the sale of said tractors
to said Weyerhauser Company and said Potlatch Lum-
ber Company, took advantage of plaintiff's said efforts
and dealt directly with said Weyerhauser Company
and Potlatch Lumber Company,  .  .  .    and be-
tween said date and the 18th day of May, 1920, entered
into an agreement of sale of said tractors to said Pot-
latch Lumber Company and said Weyerhauser Com-
pany.  .  .  .    Subsequent to the 1st day of May, 1920,

the exact date being unknown to plaintiff, defendant shipped said tractors direct to said companies, and said Weyerhauser Company and said Potlatch Lumber Company, after a trial of said tractors for a reasonable time and long prior hereto, the exact date being unknown to plaintiff, paid for said tractors pursuant to said agreement. . ·. . Said sales, and each of them, were the result of negotiations which were continuous from prior to said 11th day of November, 1919, until the final consummation of said sales; and that plaintiff's said efforts were the direct and procuring cause of said sales."

On April 28, 1920, defendant wrote and mailed to plaintiff a letter, reading, in so far as necessary to here notice its language, as follows:

"In accordance with the clause providing for cancellation of the agreement between C. L. Best Gas Traction Company and Rochester Motors Company, we beg to advise that effective May 1st, 1920, the said agreement is hereby cancelled."

This letter was received by plaintiff on May 1, 1920, and is attached to and made a part of the complaint. Plaintiff has at all times refused to be bound by said attempted revocation, in so far as it may have been intended by defendant to deprive plaintiff of his right to compensation for his services rendered, resulting in the sale of the two tractors to the Weyerhauser and Potlatch Companies. Defendant refused, after the writing of this letter, to allow plaintiff to take any part in the negotiation or consummation of the sale of the two tractors made by the defendant to the Weyerhauser and Potlatch Companies. The defendant has refused to pay plaintiff any compensation for his services rendered in the bringing about of that sale.

The principal argument advanced in support of the trial court's ruling holding that the complaint fails to state facts entitling plaintiff to the relief prayed for

is in substance: that the original contract between plaintiff and defendant is only an agreement for contemplated sales of tractors to plaintiff without any obligation on the part of defendant to furnish to plaintiff any tractors in consummation of such contemplated sales; that it is not an agency or commission agreement, viewed in any aspect; and that the subsequent oral agreement does not give to plaintiff any greater right by way of compensation for executed sales made by either of them in Idaho.

There does seem to be some ground for arguing that, in so far as the original agreement is concerned, it has no binding force as against defendant, in so far as wholly unexecuted sales of tractors by defendant to plaintiff in Washington is concerned; but that, it seems to us, is not the whole of the controlling conditions of our problem. It is true that the original agreement refers to plaintiff as purchaser of tractors he is to receive and thereafter sell; and it may be that, upon a refusal of defendant to consummate sales to plaintiff for re-selling in Washington, plaintiff would have no recourse as against defendant. But even if our problem were wholly so conditioned, it would not, we think, necessarily follow that plaintiff would be without recourse as against defendant as to sales of tractors made by him in Washington which should fail of consummation solely because of defendant's refusal to furnish tractors to him for that purpose, which sales should be thereafter consummated by the defendant, and of which sales, it could be said, plaintiff became the efficient, procuring cause before the termination of the agreement.

The decisions in *Willcox & Gibbs S. M. Co. v. Ewing*, 141 U. S. 627, and *Champion Spark Plug Co. v. Automobile Sundries Co.*, 273 Fed. 74, lend support to the view that as to sales of which plaintiff should become

the efficient, procuring cause, consummated by the defendant even after the termination of the written agreement, following continuous negotiations from the time of the commencement thereof by the plaintiff, before termination of the agreement, until consummated by the defendant, this original written agreement should, as to such sales, be construed as an agency agreement so as to entitle plaintiff to compensation for the making of such sales, measured in amount by the discount specified in the agreement. It is to be remembered that the original written agreement not only contemplated the sales of tractors to plaintiff, but it was also agreed that he was to re-sell them only at a specified price; that he was to render certain service to those who should purchase the tractors from him, looking to the efficient operation of the tractors; that, upon his failure to render such service, defendant had the privilege of rendering it and charging the cost thereof to plaintiff; and that he should furnish to defendant the names and addresses of all purchasers of tractors sold by him; all of which was manifestly contemplated to be done for the promotion of the interest of the defendant as well as that of the plaintiff. We make these observations to show that the original written agreement came very near, if not quite, being an agency agreement as applicable to sales of which plaintiff should become the efficient, procuring cause before the termination of the contract, though defendant should thereafter itself consummate such sales.

Now, whatever our ultimate conclusion might be as to the nature of the original agreement, that is, as to whether it was an exclusive sales agreement, or might, with reference to consummated sales to plaintiff's customers by defendant, of which sales plaintiff should become the efficient, procuring cause before the termination of the agreement, be considered as an agency agree-

ment, we are of the opinion that the subsequent oral agreement contemplating sales of defendant's tractors in Idaho, viewed in the light of what plaintiff did and was induced to do by defendant looking to the consummation of sales in that territory, became in effect an agency agreement with reference to the sale of the two tractors here in question, ultimately consummated by defendant. If the allegations of plaintiff's complaint are true, he must now be regarded as the efficient, procuring cause of that sale before the termination of the agreement by the notice given to him by defendant. Defendant not only induced plaintiff to seek customers in Idaho and put forth efforts, by the expenditure of time and money, looking to the promotion of the sale of defendant's tractors in that territory, but plaintiff, having found the Weyerhauser and Potlatch Companies as likely purchasers of defendant's tractors in that territory, and defendant becoming aware of that fact, it took particular pains to induce plaintiff to spend his efforts towards the sale of tractors to those companies, which efforts of plaintiff, as we have seen, became the efficient, procuring cause of the sale of the two tractors here in question, though ultimately consummated by defendant to the Weyerhauser and Potlatch companies. Under the facts as alleged, we think the defendant is in no position to here contend that plaintiff was not its agent for the purpose of procuring that sale, or that plaintiff did not become the efficient, procuring cause of that sale, or that plaintiff is precluded from rightfully claiming compensation, which, for want of a better term, may be called commission upon that sale, measured by the discount specified in the original written agreement. Thus viewing the oral agreement, of which the prior written agreement became a part, we think our prior decisions are conclu-

sive against the defendant, in so far as our present inquiry is concerned. *Knox v. Parker,* 2 Wash. 34, 25 Pac. 909; *Norris v. Byrne,* 38 Wash. 592, 80 Pac. 808; *Lawson v. Black Diamond Coal Min. Co.,* 53 Wash. 614, 102 Pac. 759; *Merritt v. American Catering Co.,* 71 Wash. 425, 128 Pac. 1074; *Duncan v. Parker,* 81 Wash. 340, 142 Pac. 657, L. R. A. 1915A 804.

Some contention is made rested upon the theory of want of mutuality in both the original written agreement and the subsequent oral agreement. Viewed as agreements for the sale of tractors from defendant to plaintiff, in so far as they remained unexecuted, plaintiff's contention would seem to have some sound ground to rest upon; but the oral contract, which is the one here ultimately controlling, viewed as an agency contract, as we have concluded it must be, want of mutuality therein becomes of no consequence, in view of the fact that, so viewed, it becomes an executed contract when plaintiff becomes the efficient, procuring cause of the sale which was ultimately consummated by the defendant. It is elementary that contracts which are unenforceable because of want of mutuality in their inception become enforceable in so far as they become executed contracts. 6 R. C. L. 690; 13 C. J. 334.

Some contention is made that, if the oral agreement here in question shall be construed as an agency agreement, then the defendant, being a corporation, would in any event have the right to terminate such agency employment at any time under subds. 4 and 5, § 3809, Rem. Comp. Stat., relating to powers of corporations, reading as follows:

"To appoint such officers, agents, and servants as the business of the corporation shall require, to define their powers, prescribe their duties, and fix their compensation;

"To require of them such security as may be thought proper for the fulfillment of their duties, and to remove them at will;  . . ."

Counsel for defendant relying upon our decision in *Williams v. Great Northern R. Co.*, 108 Wash. 344, 184 Pac. 340, wherein effect was given to this statutory provision. This, however, is not a question of discharging an agent or servant of a corporation. It is a question of whether or not an agent of the defendant corporation shall be paid for services which were rendered before his discharge.

We conclude that the trial court fell into error in sustaining the defendant's demurrer to the plaintiff's complaint and entering judgment accordingly.

The judgment is reversed, and the cause remanded to the superior court for further proceedings consistent with the views herein expressed.

HOLCOMB, MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.