## OHIO MARBLE CO. v. BYRD.
### No. 6203.

Circuit Court of Appeals, Sixth Circuit.
May 18, 1933.

Geo. W. Berry, of Piqua, Ohio, and J. W. O'Hara, of Cincinnati, Ohio (Joseph W. O'Hara, of Cincinnati, Ohio, and Berry & McCulloch, of Piqua, Ohio, on the brief), for appellant.

O. S. Bryant and Haveth E. Mau, both of Cincinnati, Ohio (Pogue, Hoffheimer & Pogue, of Cincinnati, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

John U. Byrd, appellee, filed his bill in equity against the Ohio Marble Company, appellant, in which he sought to recover certain amounts alleged to have been earned by him as a salesman. Jurisdiction was based upon the statutory requirement as to amount and the allegation of diverse citizenship.

Appellee averred that he was a citizen of Kentucky, and that appellant was an Ohio corporation. There was a preliminary hearing upon appellant's motion to dismiss the bill for lack of diversity of citizenship, appellant asserting that at the time suit was brought appellee was not a resident and citizen of Kentucky. The District Judge denied the motion.

Upon this jurisdictional question the evidence was that the contract sued on referred to appellee as of Newport, Kentucky. Appellee testified that his residence was No. 633 East Third street in Newport, but that his only place of business was in the Edwards Building on Walnut street in Cincinnati, where he had been located since 1915; that he was married, but had no children; that because he was temporarily estranged from his wife from June 30, 1930, he thereafter registered in and out from the Gibson Hotel in Cincinnati up until January 15, 1931; that he slept at the Gibson every night he was registered there; that while he was away from Cincinnati he was traveling in connection with his business as a salesman, but not in Kentucky; that he never voted in Ohio; that his last vote was in Kentucky two years before the hearing; that he had never declared any intention of becoming a resident of Ohio; that he paid for his room at the Gibson from day to day as any other transient guest; that he was registered in the Cincinnati Directory for 1930–1931 as "John U. Byrd, Room 814, 528 Walnut, residence Newport"; and in the Cincinnati telephone directory for 1930 both as "John U. Byrd, 528 Walnut" and as "John U. Byrd, residence 633 E. Third, Newport"; that it was not unusual for people living in Newport to carry on business in Cincinnati; that he was paying all of his wife's bills and had paid his income tax in Kentucky through the Covington office.

■ Upon a review of this evidence we conclude that there was no reversible error in the holding that appellee had not changed his domicile from Kentucky to Ohio.

Appellee's suit was upon a contract dated March 27, 1916, which had been twice modified by oral agreement as to the rate of commissions. It is unnecessary to set out these changes, since the dispute affects the period during which commissions were to be paid rather than the rate of payment.

The relevant clauses of the contract are as follows:

"Witnesseth: In the consideration hereinafter mentioned, said party of the first part *agrees to sell* the Foundry Fluxing Stone of the party of the second part exclusively in the territory taking in the part of Ohio. * * *

"On Foundry Trade the party of the first part is to have a base price of fifty cents (50c) per net ton F. O. B. Quarries of party of the second part at Piqua, O. The consideration being 5c per net ton Commission to party of the first part.

"Wherever party of the first part can obtain more than 50c per net ton F. O. B. Quarries of party of second part, the excess price is to be divided equally between parties of the first and second part. * * *

"Party of the first part is to receive commission on all Foundry Flux *sales* made in above territory whether order is placed with party of the second part direct or thru party of the first part.

"On Blast Furnace orders a special arrangement must be made.

"Party of the second part agrees to make monthly settlements for all commissions due party of the first part.

"This Agreement subject to cancellation by either party on thirty (30) days' written notice. * * *" (Italics ours.)

By letter dated July 16, 1930, appellant terminated the contract effective August 15, 1930. During its life appellee had negotiated a number of agreements for the sale of appellant's products. It was conceded that he was entitled to commissions upon all shipments which were made prior to the termination of his contract. But by the terms of the contracts made by appellee with Wheeling Steel Corporation and Hamilton Coal & Iron Company shipments were to continue until the contracts were canceled, and both were not only in force after August 15, 1930, but even up to and subsequent to the hearing in the District Court. The court decreed that appellee was entitled to commissions upon all shipments upon the Wheeling and Hamilton agreements after August 15, 1930, the termination of appellee's contract.

On August 30, 1927, appellee closed a contract with the Jackson Iron & Steel Company for its requirements of appellant's stone until September 1, 1930. During this period of three years the relationship between appellant and the Jackson Company had been satisfactory, and both parties were not only willing, but desired, to renew the agreement. For the purpose of closing the renewal, appellee called upon Mr. Shick, general manager of the Jackson Company, on four occasions, twice before receiving appellant's letter of July 16th, and twice thereafter, and on July 21st he forwarded to Shick the original of a renewal agreement and retained a copy. This renewal was in form effective as of that date, but shipments were not to begin thereunder until September 1st, the expiration date of the current agreement. Shick retained this instrument without executing it because he thought it too early to close the matter. Before August 15th appellee again called upon Shick and stated to him that he (appellee) would be released as agent on August 15th, urged Shick to execute the agreement, and exhibited appellant's cancellation letter of July 16th. Having this information Shick declined to consider the execution of the renewal left with him by appellee, because he apprehended that appellant might not honor it.

On August 11, 1930, A. Acton Hall, appellant's vice president, called upon Shick and discussed with him the execution of a renewal. Shick testified that Hall advised him that "appellee was not their regular agent any more," whereupon Shick stated, in substance, that, if it was to be understood that appellant would not longer supply its products through appellee, he would consider a contract directly with appellant. Thereupon Hall left with Shick a renewal agreement dated and effective August 30, 1930, but in all other respects similar to the renewal forwarded to Shick on July 21st by appellee, and on the next day Hall wrote the following letter:

"Piqua, Ohio, August 12, 1930.

"The Jackson Iron & Steel Co., Jackson, Ohio.

"Attention: Mr. H. S. Shick.

"Gentlemen: This letter will confirm conversation had in your office yesterday, August 11th, in regards to your fluxing stone requirements.

"John U. Byrd, of Cincinnati, will be our representative for fluxing stone until August 15th. From that date on the Ohio Marble Company will handle all sales and correspondence on fluxing stone direct.

"We will be unable to furnish you your requirements of flux thru John U. Byrd from August 15th on.

"We would greatly appreciate your signing our contract for your requirements of fluxing stone, which was left with you yesterday. * * *"

Shick held the Hall contract until August 30th, when he executed it and sent it directly to appellant, and shipments began under it on September 1st.

Upon these facts the court held that appellee was entitled to commissions upon all shipments made thereunder.

(1) As to the Hamilton and Wheeling Sales.

Appellant urged that appellee was not entitled to commissions upon shipments made upon these agreements after August 15, 1930, because his contract with appellant had then terminated. It further insisted that the phrase "agrees to sell" and the word "sales" found in appellee's contract comprehended the making of deliveries which were to be "F. O. B. quarries of parties of the second part at Piqua, O."; that appellee did not and

could not after his discharge make such deliveries, and that he was therefore not entitled to commissions thereon.

We do not agree. The words "sell" and "sales" do not always include deliveries. As stated by Prof. Williston (Williston on Sales, vol. 1, p. 527): "These words are constantly used as meaning or including contract to sell or contract to buy." In determining their meaning in the instant case we must keep in mind the situation of the parties and view the matters spoken of in the contract as they saw them. We are dealing with the relationship of principal and agent, rather than with that of buyer and seller, and we must give consideration, not only to what the parties manifestly intended to do, but to what they actually did in the execution of the agreement.

So far as the record discloses, appellee had never on any "sale" gone further in the discharge of his duty to appellant than to negotiate with prospective purchasers the contracts calling for future shipments and deliveries. In no instance had he ever undertaken to, and we do not think that it was intended that he should, see that shipments were actually made. The shipments were made by appellant f. o. b. its quarries. Appellee's obligation was discharged when the contracts or "orders" were closed and forwarded to appellant. It is simply a question whether appellee shall be paid for services fully rendered before his discharge, and it is not material that the commissions did not become due until after the termination of his contract. See Willcox & Gibbs Sewing-Machine Co. v. Ewing, 141 U. S. 627, 637, 12 S. Ct. 94, 35 L. Ed. 882; Dibble v. Dimick, 143 N. Y. 553, 38 N. E. 724; Hamilton v. C. L. Best Gas Traction Co., 123 Wash. 488, 498, 212 P. 1077.

We are not dealing with a situation wherein the agent had not fulfilled his obligation at the time of his discharge. Such cases are found in Locher v. New York Life Insurance Co., 200 Mo. App. 659, 208 S. W. 862; Monroe v. Grolier Society of London, 208 Cal. 447, 281 P. 604, 65 A. L. R. 989, and Singer Mfg. Co. v. Brewer, 78 Ark. 202, 93 S. W. 755.

(2) As to the Jackson Steel & Iron Company Contract Negotiated by Hall.

The court was of the opinion upon the facts that appellee was the efficient cause of the execution of this contract; that he was deprived of the benefit of it by the acts and conduct of Hall, and was therefore entitled to commissions upon it. We are not in accord with this view. The renewal was in no sense due to the activities of appellee. It came about naturally because of the satisfactory service appellant had rendered to its old customer, the Jackson Company. Nor do we find anything in the conduct of Hall of which appellee can rightfully complain. Hall made no effort to close an agreement with the Jackson Company effective during the period of appellee's agency. His letter of August 12th contained a plain statement of fact already known to Shick that appellee's agency continued to August 15th, but no longer, and that from that date appellant would handle its sales directly, and would not honor contracts made by appellee. When read as a whole, the letter carries no inference that appellant would dishonor any agreement made with appellee during the term of his agency. The case is not within the principle of those cases wherein an acceptable purchaser is procured by the agent and consummation of the sale is prevented by the fault of the principal.

The result is that so much of the decree as allows commissions to appellee upon the Jackson Iron & Steel Company contract will be expunged, and the decree as so modified is affirmed, the costs to be divided.