## CRUM v. MURRAY.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1900.)

No. 1,253.

PRINCIPAL AND AGENT—CONTRACT OF EMPLOYMENT—COMMISSIONS.

Under a contract appointing an agent to solicit applications for shares in a corporation, within stated territory, and to collect the monthly dues thereon, for the period of three years, for which service the agent is to receive 80 per cent. of the first month's dues collected, and 5 per cent. of the succeeding months' "dues collected," he cannot recover the stipulated commissions on dues which he might have collected if the contract had been continued after the three years, where there is no claim that the contract has been renewed, or that the agent is entitled to have it renewed, or that he has been illegally discharged, or any other breach committed by the corporation.

In Error to the Circuit Court of the United States for the District of Colorado.

The Granite State Provident Association and O. B. Crum, the plaintiff in error, entered into the following contract:

"This agreement, made in duplicate this 17th day of February, 1892, between the Granite State Provident Association of Manchester, New Hampshire, and O. B. Crum, of Denver, Colorado, witnesseth: First. That the said Granite State Provident Association hereby appoints the said O. B. Crum as its general solicitor in and for the states of Colorado, Wyoming, and Utah for the period of three years, and authorizes him to solicit applications for shares, and collect the monthly dues thereon, in said territory, and for said association, as hereinafter provided, except that shares shall not be written in Utah by him until the association shall decide to commence business in that territory, and shall so empower him in writing. That the said solicitor shall receive in full pay for such services and for all expenses of procuring, collecting, and remitting the monthly dues the following rates of commission: Eighty (80) per cent. of the first month's dues collected, five (5) per cent. of the succeeding months' dues collected, $7.50 per share flat for fully-paid stock, one (1) per cent. of all dues collected after the first month. Second. That said solicitor hereby agrees to furnish a good and sufficient bond, with two sureties, for the sum of $2,000.00, for his faithful performance of this contract, and to increase the same as his work increases; and that this contract shall not be in force any longer than said bonds are made and increased as agreed. Third. A failure or neglect to make reports, or to pay over moneys belonging to the association according to the conditions of this contract, shall be considered sufficient reason on the part of the association for canceling the same at any time without notice. Fourth. The solicitor agrees to indemnify and save harmless the association from all damages and expenses of suits growing out of his unauthorized transactions; and, in case the association shall be made a party to any such suit, the solicitor shall take upon himself the defense thereof without request from the association. Fifth. On joint work secured by the assistance of special agents the said solicitor shall be entitled to one-half of the rates of commission hereinbefore provided for, but no such special agent shall assist said solicitor in any such work without the consent of said solicitor. Sixth. The said solicitor agrees to furnish at least $500,000 of new shares during each year of the continuance of this contract. Seventh. The said solicitor shall, on the 20th day of each month, remit to said association all funds belonging to it in his possession at that time. Eighth. The said association on its part, in addition to the commissions aforesaid, agrees to answer promptly all communications from said solicitor relating to the business of said association in the above-mentioned territory. Ninth. The said association agrees to assist said solicitor in his work by reporting to him its approval or rejection of each application for a loan within fifteen (15) days of its reception at the home office, but it is understood that said approval need not include the appropriation of money at the time of approval. Tenth. The said association agrees at the expiration of this contract to renew the same for another period of three (3) years, provided all its conditions have been fulfilled by said solicitor. Eleventh. In consideration aforesaid, the said solicitor agrees to devote his time and attention to said business of soliciting applications for shares, and collecting the dues thereon, and to make reports of each month's business on the 20th day of the month, with remittances to balance his reports, and that he will not do business for any similar association so long as he holds this contract, and that a failure to carry out this agreement in any particular shall be considered sufficient reason for allowing the association to close this appointment at any time without notice. Twelfth. Upon discontinuance of this contract all interest of said solicitor hereunder in commissions, dues, renewals, or otherwise shall revert to the said association.

"In witness whereof, we have hereunto set **our** hands and seals in duplicate this 17th day of February, 1892.

"Granite State Provident Association,
"By H. F. Morse, Secretary.
"O. B. Crum. [L. S.]"

The parties entered into a second contract on the 6th day of January, 1893, by which Crum's agency was extended to the state of Kansas. This last contract, like the first, expired, by its terms, on the 17th of February, 1895, and its tenor and effect were identical with the first contract so far as relates to the question in controversy in this case. On the 18th of March, 1896, Albert L. Murray, the defendant in error, was duly appointed receiver of the Granite State Provident Association to wind up its affairs, and as such receiver brought this action against O. B. Crum, the plaintiff in error, to recover certain moneys alleged to be due from him to the Granite State Provident Association. The defendant admitted the justice of the plaintiff's demand, but set up a counterclaim for $12,222.57 for commissions which he alleged he was entitled to under the contract. The court told the jury: "What I have to say to you in this connection is that Mr. Crum cannot have commissions upon moneys which were not paid to the company. He is entitled to commissions upon all moneys received by the company from its shareholders within the territory for which he was agent, which was the states of Colorado, Utah, Wyoming, and Kansas, I believe. Now if, in the accounts which were put before you, if he is allowed commissions upon all moneys received from shareholders within his jurisdiction, those accounts are correct. He cannot claim, as he did before you on the stand, that he is entitled to a commission of five per cent. upon the uncollected amounts of those dues." Exception was taken to so much of this charge as told the jury the defendant was not entitled to commissions on dues not collected, and this is the only error assigned.

Henry B. Babb, for plaintiff in error.

Charles E. Gast, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendant's claim for commissions depends on the construction of the contract. It will be observed that by the express terms of the contract the defendant was to receive "in full pay for such services and for all expenses of procuring, collecting, and remitting the monthly dues the" commissions specified in the contract. It will be further observed that he was to receive these commissions on "dues collected" only, and that he was employed as agent for three years only, with a right of renewal, which seems not to have been exercised. Under this contract he was to be compensated for his services by the commissions specified in the contract on the moneys actually collected by him, and, as he admits that he has received these commissions for the full term of the contract, and for any collections made thereafter, he has no further claims for commissions or other compensation. The witness on behalf of the plaintiff produced the books of the association, and testified there was due from the defendant for money collected, and not remitted, up to January 1, 1896, the sum of $6,852.29; and that, in addition to this amount, he was indebted for excess of commissions retained in the sum of $275.98, and at the conclusion of this testimony is the following record entry:

"For the purpose of the review by the court of appeals sought by defendant, and for no other purpose, he admits that the foregoing evidence was sufficient to establish his liability to plaintiff on account for the amounts therein mentioned and as stated by the witness."

It is thus conclusively established by the defendant's admission of record that he has been overpaid his commissions on all moneys collected by him. He cannot claim commissions on moneys he never

collected, but which he might have collected if he had been retained in the service of the company indefinitely. By the explicit terms of the contract, his commissions are made to depend on his collection of the money; and when his agency ceased, and he ceased to collect the dues, his commissions ceased.

The defendant did not in his answer, nor on the stand as a witness, claim that at the expiration of the three years the contract had been renewed for another period of three years, or for any other length of time, or that he had sought to have it renewed, or that under the terms of the contract he was entitled to have it renewed; nor did he set up or claim an illegal violation thereof by the association. His admission of record shows that he was not entitled to a renewal of the contract, and that, if it had been renewed, the company would have had the right to cancel it under the clause of the contract which declares:

"A failure or neglect to make reports, or to pay over moneys belonging to the association according to the conditions of this contract, shall be considered sufficient reason on the part of the association for canceling the same at any time without notice."

A different question would be presented if the company had committed a breach of the contract on its part, and discharged the defendant, without sufficient cause, before the expiration of the term of his contract, or had done any other act inconsistent with the duty it owed him under the contract; but nothing of the kind is alleged or occurred. The defendant continued to serve as agent of the company for the full term of the contract, and for some time afterwards, and has been overpaid the stipulated commissions on all moneys collected by him for the whole time during which he acted as agent. The contract and facts in this case are totally unlike the contract and facts in the case of Newcomb v. Insurance Co., 19 U. S. App. 669, 10 C. C. A. 288, 62 Fed. 97; Id. (C. C.) 51 Fed. 725; and the contract and facts in Wells v. Association, 39 C. C. A. 476, 99 Fed. 222. The case last cited is an extremely instructive one on the contract there in suit, but the contract in that and the other case cited bears no resemblance to the contract here in suit. Moreover, in the cases cited the plaintiffs relied on a breach of the contracts by the insurance companies, who, it was alleged, had illegally deprived the agents of their business and commissions; but in this case there is no claim that the company committed any breach of the terms of the contract, express or implied. No contract for an agency extending beyond the three years mentioned in the agreement is set up, and under that agreement the basis of compensation is the commissions specified on the "dues collected" during the continuance of the contract. There is no provision of the agreement, express or implied, giving to the defendant any interest in the business or the commissions on moneys collected by others after the discontinuance of his agency; on the contrary, by the twelfth stipulation of the contract it is provided that "upon discontinuance of this contract all interest of said solicitor hereunder in commissions, dues, renewals, or otherwise shall revert to the said association." The judgment of the circuit court is affirmed.