[L. A. No. 9989. In Bank.—October 28, 1929.]

H. R. MONROE, Respondent, v. THE GROLIER SOCIETY OF LONDON (a Corporation), Appellant.

Brown & Bissell, Leet W. Bissell, Wm. R. Crawford, Jr., and J. Fearon Brown for Appellant.

Erwin P. Werner, J. C. Landry and J. K. Wilson for Respondent.

THE COURT.—Petition for hearing after decision of the District Court of Appeal, Third Appellate District, Plummer, J., writing the opinion of the court. Upon a more thorough investigation of this case than we were able to give it on the petition for hearing we have concluded that the decision of the District Court of Appeal fully and correctly decided the cause and we therefore adopt its opinion as the decision of this court.

"Plaintiff had judgment against the defendant in this action for the sum of $2,180.68 alleged to be due as commissions earned on a certain contract of employment hereinafter set forth. From this judgment the defendant appeals.

"The plaintiff in his complaint asks for the sum of $3,099.78, against which the court allowed a counterclaim or offset in favor of the defendant in the sum of $919.10. The defendant, in its answer, set up a counterclaim against the plaintiff in the sum of $795. This counterclaim was allowed in the amount just stated, as an offset to plaintiff's demand.

"The record shows that the defendant is a corporation engaged in the business of selling books; that during the time hereinafter mentioned the plaintiff was employed by the defendant as the general agent of the defendant, having the management and control of the sale of books and the collection of the purchase price thereof from the persons to whom books were sold. The method of conducting the business is not disclosed by the record, but there is sufficient

to lead to the conclusion that books were sold upon the instalment plan, and it was the duty of the plaintiff to supervise the sale and distribution of books and to look after the collection of the instalments to be paid by purchasers to whom books were sold. In other words, the record shows that the plaintiff had at least two important duties to perform—first, to make sale of books; second, to attend to collection of the purchase price of the same. The extent of the agency is not disclosed by the record, further than that the evidence would indicate that the territory over which the plaintiff had supervision included the state of California and part of the state of Oregon, as the documents in the record refer to Los Angeles, San Francisco and Portland. The record shows that considerable correspondence was had prior to reducing the terms of the employment to writing, and that finally the parties came to an agreement which was and is embodied in the following instrument:

> " 'The Book of Knowledge
> " 'The Children's Encyclopedia
> " 'The Grolier Society
> " '2 West 45th Street
> " 'New York
>
> " 'June 23, 1922

" 'Telephone: 0200 Vanderbilt

" 'Mr. H. R. Monroe.

" 'Dear Sir:

" 'Confirming our conversation we agree to pay you four per cent (4%) on all net collections (after the discount has been deducted) on all business which was booked prior to October 1, 1921.

" 'On all business booked subsequent to October 1, 1921, we will pay you a commission of two per cent (2%) on all net collections after the discounts have been deducted, with the exception of orders where the total collections have not exceeded fifteen per cent (15%) of the contract price. In other words, on a $65.00 account, accompanied by a $4.00 payment, no commission would be due you on such collection until after the third payment of $4.00 has been made. The commission is then due you on these three payments the same as on subsequent payments—settlements to be as of October 1, 1922, and March 1, 1923.

" 'This agreement is retroactive to October 1, 1921, and terminates February 28, 1923.

" 'Ycurs very truly,

" 'The Grolier Society.

" 'A. E. Smith.

" 'Accepted by H. R. Monroe.'

"The record shows a stipulation to the effect that the plaintiff's employment was continued under the foregoing contract to and including the 30th day of September, 1923. The plaintiff, under this agreement, was employed as a resident manager of the San Francisco office which controls the western territory or what is known as the western territory.

"The subject of dispute in this action is the compensation to which the plaintiff is entitled on business booked subsequent to October 1, 1921. The trial court accepted the theory that the plaintiff was entitled to 2 per cent on all net collections on business booked subsequent to October 1, 1921, irrespective of whether collections were or were not made during the period for which the plaintiff was employed. In other words, that the plaintiff was entitled to 2 per cent of net collections irrespective of whether collections were made by him or by someone else after his employment had terminated. The appellant contends that as the plaintiff had the duty of making collections as well as the duty of making sales, his sales and collections during the period of his employment were concurrent duties, and that the plaintiff was and is entitled only to 2 per cent on all net collections made by him on business booked subsequent to October 1, 1921, and prior to the 30th day of September, 1923, and in furtherance of this contention appellant calls attention to the fact that the first clause of the employment, to-wit, that clause which specifies that the plaintiff should receive 4 per cent on all net collections, less certain discounts, on all business which was booked prior to October 1, 1921, indicates and shows the intent of the parties in entering into the agreement, that collections and commissions went together, that is, that the right to commissions was dependent upon collections; otherwise, the defendant, on old business, would be paying double commissions, to-wit, 4 per cent to the plaintiff and whatever per cent had been agreed upon to the predecessor of the plain-

tiff. To understand the meaning of the terms used in the writing which we have set forth, it is necessary to bear in mind that the collections were just as important a branch of the business to be managed by the plaintiff as that of making sales. If the collections were not properly attended to, the sales would prove profitless. If sales were made to hazardous risks, or, in other words, to persons from whom collections could never be made, there would be no profit either to the defendant or to the plaintiff and thus, the intention is enforced, by the very terms of the contract, that collections and commissions should go together, and that the contract, taken as a whole, means this, that 'on all business booked subsequent to October 1, 1921, we will pay you a commission of 2 per cent on all net collections made by you after the discounts have been deducted,' etc. This, to insure efficient management on the part of the plaintiff. Any other construction would lead to this: That the plaintiff might devote his entire time and attention to the sales department of the undertaking, leaving the collections not attended to, and then, at the expiration of the term of his employment, retire and quietly await the collections made on the sales during his administration, and demand his 2 per cent. If it had been the duty of the plaintiff only to make sales, then this construction might be held permissible, but in view of the fact that the plaintiff had a double duty to perform as manager of the company, we conclude that sales and collections were joint duties and obligations, and began and ended with the beginning and termination of the contract of employment. As said in 13 C. J. 525, sec. 486: 'A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument, and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part, as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect.' In construing the writing involved in this action, as we have said, it is necessary to look into the business, to conduct which the plaintiff was being employed. The writing itself only relates to compensation. The business and the duties of the plaintiff, so far as necessary to a determina-

of this cause, are set forth in the record, and the plaintiff was required to attend to all the business as manager, and not to a part, and the intent of the instrument, as we have said, was to secure efficient management and encourage the plaintiff not only in making sales, but in making collections. This is apparent from the correspondence set forth in the record.

"A somewhat similar contract was involved in ·the case of *Ortega* v. *Collins New York Medical Institute,* 127 App. Div. 293 [111 N. Y. Supp. 427], and it was there held that 'one employed to carry on business correspondence in a foreign language, under a contract giving him a certain sum per year, and a special commission on all receipts in his department, settlement of his compensation to be made monthly, is not, after his·discharge, entitled to commissions on moneys received on business procured by him during his employment.' Likewise, in the case of *Crum* v. *Murray,* 102 Fed. 92 [42 C. C. A. 185], where it was held that a contract for commissions for services read: '80 per cent of the first month's dues collected, 5 per cent of the succeeding months dues collected, $7.50 per share, flat, for fully paid stock, and 1 per cent of all dues collected after the first of the month,' did not apply to, and did not give to the person employed any right to dues collected after the termination of the contract. While the contracts involved in those cases, as we have said, differ somewhat in their terms from the one under consideration, they are in substance the same in relation to the compensation to be paid for the services to be performed. Again, as provided by section 1647 of the Civil Code: 'A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.' Thus, the matter to which the contract we have to consider relates to the performance of the duties which we have herein specified, and when read in the light of the duties to be performed, we conclude that there is no ambiguity in the instrument relating to the plaintiff's compensation, and that he was to be compensated for the duties performed by him, and not for the duties left unperformed; that is, his failure to make collections during the term of his employment. This is further evidenced, as we have hereinbefore said, by the fact that the plaintiff was employed to

perform duties left unperformed by his predecessor, and paid a separate compensation therefor.

"The record shows that the defendant's counterclaim for $769.10 was for over-payments made by the defendant to the plaintiff, on account of drafts drawn by the plaintiff in excess of the amount to which the plaintiff was entitled under the contract set forth herein, and that the court found said amount justly due the defendant, and that there were some other items considered by the court which increased the counterclaim allowed to the sum of $919.10. As to these items the record gives us no information, and for the purpose of terminating this litigation without further trial, we will act upon the appellant's request and accept the figures set forth in the defendant's answer as a counterclaim, and direct judgment in its favor therefor.

"It follows from what has been said, the error of the trial court consisting only of a misconstruction of the contract, that no further proceedings need be had."

The foregoing consideration of the cause impels a reversal of the judgment and a direction to the trial court to enter judgment in favor of the defendant for the amount of its counterclaim set forth in its answer, to wit, in the sum of $769.10, and costs.

It is so ordered.