[Crim. No. 1925.   Second Appellate District, Division Two.—April 9, 1930.]

THE PEOPLE, Respondent, v. CRUZ VICUNIA, Appellant.

Sigmund S. Renco for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

NORTON, J., *pro tem.*—The defendant in this case was convicted of murder in the second degree and appeals from the judgment of conviction and the order denying his motion for new trial. The killing of the deceased, Santiago Fuentes, by the defendant, was admitted by him, and briefly stated the evidence by the prosecution upon the trial of the case showed that in the morning of the 20th of September, 1929, two days before the deceased was slain by the defendant, he met the deceased's wife near the station of the Pacific Electric Company at Los Nietos, where she was waiting to board a street-car for Los Angeles, and endeavored to induce her to enter his automobile, and proposed to her that she go with him for the purpose of having illicit relations. He taunted her with the accusation that her husband was familiar with his, Vicunia's wife, and when she refused to accede to his proposal he threatened her husband, stating that he hoped to deprive her of him and allow him to "roll in his own blood." On the evening of the Sunday following this threat by defendant to take the life of deceased while Mrs. Fuentes was in her home she heard five shots fired in rapid succession, and looking out the front door of her home she saw her husband struggling with the defendant for the possession of a pistol which was in the hands of the defendant. That her husband finally secured possession of the pistol and shortly thereafter the defendant was seen by her running into his own house from which he presently left in his automobile. No more than five shots were fired. The deceased was taken to a hospital and at the hospital the pistol, together with the five exploded shells, was surrendered by him to a friend of his who brought him to the hospital. The pistol was

a 38-caliber Colt's, and was admitted by the defendant to be his. Mrs. Fuentes testified her husband did not own a pistol and that she saw but one pistol at the time of the struggle between her husband and Vicunia. An autopsy was held after the death of the deceased which disclosed that he was suffering from two wounds, a basal fracture of the skull and a gunshot wound in the abdomen which caused his death. The surgeon who performed the autopsy found a bullet from a 38-caliber pistol in the soft tissues of the hip where it had lodged after passing through the iliac crest. A bullet hole was found in the fence in front of the Fuentes home, which tended to corroborate her testimony that the shooting occurred in front of the Fuentes house instead of as claimed by the defendant in front of his house, which was located in the lot adjoining that of the deceased. Defendant and his family gave a different account of the transaction from that of the witness for the prosecution, but it was the province of the jury to determine where the truth lay and there is ample evidence to support the verdict of the jury.

The chief ground for reversal urged by appellant is the refusal of the trial court to direct the jury to bring in an instructed verdict of not guilty on the ground that the People failed to prove the *corpus delicti*. As above stated, there was testimony to the effect that defendant threatened to kill deceased; the testimony of the wife of deceased is to the effect that she heard five shots fired in rapid succession and saw defendant and the deceased struggling in the front yard of her home. That the struggle immediately succeeded the firing of the shots and that during the struggle she saw a revolver in the hands of the defendant. Admittedly, the shooting took place in the yard of either defendant or deceased and not in the house of defendant, and at the end of the struggle it is admitted that deceased was in possession of the gun belonging to defendant, and from which five shots had been fired.

In a trial where the charge is murder, the *corpus delicti* consists of proof of the facts forming the basis of the offense and the existence of a criminal agency as the cause of it and it may be proved by circumstances shown in evidence or by inference drawn from the facts shown. (*People* v. *Ford,* 85 Cal. App. 258 [258 Pac. 1111].)

Obviously, the testimony of the wife of deceased if believed by the jury, together with the admitted facts above mentioned, would have justified the jury in concluding that a criminal agency was the cause of the admitted death of the deceased and it is the opinion of the court that the proposed instruction was properly refused by the trial judge.

Numerous objections are urged, some to the refusal of instructions refused by the trial judge and others to instructions which were actually given by the trial judge. As to those given by the trial judge, it is sufficient to say that this court finds no error in any thereof. ██ The instructions refused are not numbered and it is necessary in identifying them to refer to the page in the clerk's transcript in which they are contained. Instruction, page 40, clerk's transcript, proposed by defendant, was properly refused by the court for the reason that it did not include as an element for the justification of killing in self-defense that the fear of great bodily injury on the part of defendant arose from circumstances which were such as to justify a reasonable man in entertaining such fear. ██ Instruction, page 43, clerk's transcript, as proposed to the court, was clearly an instruction to the jury as to matters of fact which was not within the province of the court. It is true that this instruction might have been altered and reframed so as to contain a correct statement of the law, but to do so would have required more than the correction of a mere clerical error. The instruction as proposed was fundamentally an instruction as to matters of fact and not an attempt to define the law applicable to the case and this court believes that the trial judge was justified in refusing to give the instruction in the form in which it was proposed. It is also covered by instructions given by the court wherein the court fully and fairly instructed the jury as to when a defendant can act upon appearances and justify the killing of another in self-defense.

Other grounds are urged for a reversal of the judgment and after consideration of them we are of the opinion that they are relatively trivial and without any merit.

The judgment and order are affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.