416

## RABE v. RUDOLPH WURLITZER CO.
### No. 364J, Civil.

District Court, S. D. Florida,
Jacksonville Division.

Feb. 26, 1942.

John E. Mathews, of Jacksonville, Fla., for plaintiff.

Marks, Marks, Holt, Gray & Yates and Francis M. Holt, all of Jacksonville, Fla., for defendant.

STRUM, District Judge.

Under date of January 1, 1940, plaintiff and defendant entered into a written contract whereby plaintiff was employed as a District Manager for the defendant in charge of sales of phonographs within a territory described in the contract. Plaintiff performed his duties under this contract until April 13, 1940, when defendant terminated the contract by notice as provided in Paragraph 11 thereof, hereinafter quoted.

While the contract was in force the defendant shipped, to various distributors located within the territory mentioned in the contract, a large number of phonographs on orders secured by the plaintiff, some of which phonographs were shipped on consignment and some on open account.

Plaintiff has been paid his commissions on all sales—both consignment and open account—on which settlement had been effected on April 13, 1940, when the contract was terminated. Plaintiff sues for commissions alleged to be due on account of sales made prior to April 13, 1940, but on which settlements with the ultimate purchasers were effected subsequently. Plaintiff contends that since in some instances the distributors "sold" some of the phonographs to themselves as operators, they thereby became ultimate purchasers, and since all these distributors had approved credit standing with the defendant, they are ultimate purchasers, and plaintiff therefore entitled to his commissions on these sales, even though settlement was not effected until after April 13, 1940, when the contract was terminated.

There is no dispute between the parties as to the period during which the contract remained in force, and there is no contention that the contract was wrongfully terminated. There being no dispute on the facts, the case must turn upon a construction of the contract.

 This is not a situation in which services have been performed in reliance upon an implied promise to pay their reasonable value. The action is brought in general assumpsit, but the services were performed under an express contract between the parties. The basis of recovery

must be found in this contract. There can be no recovery, even under quantum meruit, unless there has been complete performance by the plaintiff of his duties under the contract, leaving only the payment of his compensation by the defendant.

The controlling question is, when is a commission to be regarded as "earned" under the contract between the parties: (a) When the goods are shipped, or (b) when "settlement" therefor, as defined by the contract, has been effected.

The answer is to be found in Sections 3, 5, and 11 of the contract, when read together. Sec. 5 provides that commissions shall be credited to plaintiff's account "upon receipt by the company of settlement" as therein defined, either (1) cash; (2) notes and installment contract from a final purchaser or consumer; (3) evidence that the goods have been accepted by a final purchaser or consumer, having approved credit standing, to be paid for in cash within 30 days. This provision particularizes the general provisions of Sec. 3 of the contract, which simply provides generally that the plaintiff shall receive commissions on all sales in his territory. Until there has been a "settlement" the commissions have not been fully earned by the plaintiff, for it is as much a part of his duties to secure the settlements for the goods as it is to procure the orders therefor. This duty of the plaintiff to secure settlement for the goods is just as vital as the securing of the order, for unless a sale is followed up by an acceptable settlement it is of doubtful value. The contract provision that plaintiff should not be "credited" with a commission until settlement had been received by the company was no doubt designed to ensure the salesman's continued interest in the transaction until final settlement, in which the company was vitally interested. Otherwise, commissions could be claimed indiscriminately on improvident sales, even though there was no real prospect of the company receiving a settlement.

Even though the company, for bookkeeping purposes, tentatively credited the plaintiff with a commission when the goods were shipped, there has been no departure from the practice of withholding any settlement with the plaintiff for his commission until settlement with the ultimate purchaser, as contemplated by the contract, had been effected. Until that time the plaintiff was not notified that his commission was due him, or had been earned.

Even then, under Sec. 6 of the contract, an apparently earned commission was subject to revocation and "charge back" to the salesman in the event a deferred payment settlement went into default. To that extent, plaintiff's commissions were still contingent, even after a settlement with the ultimate purchaser had been effected.

This interpretation of the contract is further fortified by Sec. 11 of the contract, which provides that the agreement may be forthwith terminated by either party by a written notice, and that "upon termination, by whatever event, no further commissions shall be credited to the Manager (plaintiff), nor shall he be entitled to any further compensation," with certain exceptions not pertinent here.

It follows that when the contract was lawfully terminated by notice on April 13, 1940, plaintiff was entitled to commissions on all sales—both consignment and open account—on which settlements had been effected on or before that date, but not for sales on which settlement had not then been effected, even though made by plaintiff or in his territory, prior to that date. Monroe v. Grolier Society, 208 Cal. 447, 281 P. 604, 65 A.L.R. 989; Crum v. Murray, 8 Cir., 102 F. 92; Ortega v. Collins New York Medical Institute, 127 App. Div. 293, 111 N.Y.S. 427; Urquhart v. Scottish-American Mortg. Co., 85 Minn. 69, 88 N.W. 264.

If the contract had been wrongfully terminated, thus wrongfully preventing a performance by plaintiff, a wholly different question would be presented. But this termination was authorized by the contract, and the fact that plaintiff thereby lost potential commissions not yet fully earned, but which might have accrued to him had the contract continued in force, is a hazard inherent in the terms of the contract.

Singer Mfg. Co. v. Brewer, 78 Ark. 202, 93 S.W. 755, seems to support plaintiff's contentions, but that case stands alone, as opposed to those above cited, and others, which in my opinion correctly interpret contracts of this nature to mean that the commission is not "earned" until settlement with the final purchaser is effected.

Judgment for defendant.