[Crim. No. 3581.   Second Dist., Div. Three.   Aug. 31, 1942.]

THE PEOPLE, Respondent, v. WILLIAM SEYMOUR, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney General, and R. S. McLaughlin, Deputy Attorney General, for Respondent.

WOOD (PARKER), J.—Defendant was adjudged guilty of grand theft of one star sapphire diamond clip. Trial was by the court, a jury having been waived.

Defendant appeals on the ground that the verdict is contrary to the law and the evidence and that the court erred in certain rulings.

On April 11, 1940, appellant and Franchot Tone, residents of California, were in New York City and appellant, who conducted a jewelry store in California, made a sale of certain jewelry to Tone. During the course of that transaction, appellant showed Tone a star sapphire jewel which he then had on consignment from a wholesaler. The wholesale price was $14,000; appellant and Tone agreed that it should retail for considerably more and Tone purchased the jewel by paying appellant $14,000, evidenced by his check payable to appellant and indorsed by him. The jewel remained in appellant's possession pursuant to the terms of the following written instrument, dated April 12, 1940:

"The property described below is the sole property of Franchot Tone and is received by the undersigned at the risk of the undersigned for inspection only with the understanding that title is to remain with Franchot Tone and that the undersigned, William Seymour, will return said property on demand. Before any sale can take place and title pass the sum of $14,000.00 must be paid to Franchot Tone and all profits above the amount of $14,000.00 is to be divided between Franchot Tone and William Seymour equally. It being the understanding herein that in event said property is damaged, lost or stolen or destroyed before such sale, that the undersigned William Seymour, will be responsible therefor, whether caused by the undersigned or by another over whom the undersigned has no control. The agreement and memorandum is to be in effect for ninety days from above date and at the end of this period Franchot Tone is to receive $14,000.00 in currency of the United States or has the right to demand his above property from William Seymour in the same condition as when taken by William Seymour. If above property is sold all monies received by William Seymour are to be paid at once to Franchot Tone and before any profit is received by William Seymour Franchot Tone is to have been paid in full." (There followed a description of the jewel and the signatures of appellant and Tone.)

After the said transaction, Tone did not see appellant until about Christmas, 1940, at appellant's jewelry shop in Beverly

Hills. At that time appellant told him he had a prospective purchaser. Tone next saw appellant in March of 1941, when appellant told him that he had given the "stone" to a prospective purchaser on approval and that all that remained to be done was to work out the details of payment and he then asked Tone if he desired cash or if he would be willing to take notes in payment thereof. The next time Tone talked with appellant about the jewel was in June, 1941, when appellant told him that he was going to either get the jewel back or collect the money for it. The following week appellant went to Tone's home and agreed to get the jewel and deliver it to Tone's business manager so that he could put it in Tone's safety deposit box. Thereafter a week passed and Tone, not having heard from appellant, went to his residence and there appellant told him that he had borrowed $1,000 on the jewel from Mrs. Flatto, that he was paying the sum back and would then be able to recover the "stone." Tone testified that during their conversations up to June, 1941, he continued demanding either the return of the jewel or $14,000, but that in June, 1941, he demanded a return of the jewel. In July, 1941, Tone turned the matter over to his attorney who testified that he first talked with appellant, by telephone, early in July, 1941, and demanded that he return the jewel; that appellant told him he had already given his attorney $500, which was all that was needed to get the jewel and "clear up the transaction," and that it would be delivered to Tone's business manager the next day at 11 o'clock. The next day appellant said he had had some trouble with his attorney and would investigate and see why he had not obtained the jewel. A series of telephone calls ensued and Tone's attorney finally told appellant he didn't believe his story and wanted the truth; that appellant said the truth of the matter was that he borrowed $1,000 on the jewel, had paid back $500 and there was still $500 due which he hadn't been able to "raise." To this Tone's attorney replied that because the stone was of such great value and he didn't want anything to happen to it, he would give appellant $500 and go with him to get the jewel back. Appellant agreed to call Tone's attorney as soon as he completed arrangements but, hearing nothing more from appellant for a day or two and being unable to contact him in the usual manner, Tone's attorney sent appellant a telegram on July 28, 1941, in which he demanded return of the jewel. On this same day, these two

parties had a telephone conversation in which appellant said that he had borrowed $5,000 from Mrs. Flatto, had paid back $4,000 and needed $1,000 to get the jewel back. Tone's attorney testified that he replied: "Immediately make arrangements to repay the $1,000, and meet me, and I will give it to you so we can get the stone back." The next morning, July 31, 1941, appellant called him and stated that he was unable to communicate with Mrs. Flatto. Appellant then went to the office of Tone's attorney and said that the loan from Mrs. Flatto on the jewel was $11,000. While there, appellant wrote a letter to Mrs. Flatto in which he stated that the $11,000 was a loan by her on the jewel; that she was quite aware of the circumstances, "the saving of the business," and that he had promised her a bonus of $1,500 only because of the importance of the loan. He further stated that he thought she should help him straighten the matter up as she knew he was not the owner and "simply held it as a consignee for sale."

Appellant delivered the jewel to Mrs. Flatto in November, 1940, and in return received the sum of $11,000 from her. He also executed a bill of sale therefor to Mrs. Flatto, dated November 14, 1940, in which he stated, "I hereby certify that I have full and complete title to the . . . Star Sapphire Diamond Clip." Appellant testified that Mrs. Flatto agreed to return the jewel to him provided he paid her the sum of $12,500 on or before January 15, 1941, and that if he did not make such payment within that time, the jewel then "belonged to" Mrs. Flatto. Mrs. Flatto testified that the transaction was a sale to her; that there was something said about appellant repurchasing the jewel in January but that she "just bought it and that was the end of it" so far as she was concerned. No part of the money was repaid to Mrs. Flatto by appellant and Mrs. Flatto retained the jewel.

Appellant contends that the document above set forth was a contract of sale or return; that title to the jewel vested in him upon delivery; and that the case presented is therefore one of a civil rather than a criminal nature. The respondent contends that the said document created an agency; that title to the jewel remained at all times in Tone; and that appellant by his act of delivering the jewel to one Mrs. Flatto in consideration of $11,000, whether under a contract of sale or a pledge, converted it to his own use.

Section 1739 of the Civil Code provides in part as follows: "Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer . . . Rule 3 . . . When goods are delivered to the buyer 'on sale or return,' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery. . . ." The agreement expressly provided, "The property described below is the *sole* property of Franchot Tone . . ." (italics added), and that the jewel was received by appellant, ". . . for inspection only with the understanding that title is to remain with Franchot Tone. . . ." These provisions are not in accord with a sale or return contract; that title was to remain in Tone seems to have been emphasized in the agreement, especially in the light of the next statement, "Before any sale can take place and title pass the sum of $14,000.00 must be paid to Franchot Tone. . . ." In other words, the payment of $14,000 to Tone was a condition precedent to the passing of title to the jewel. It should also be noted that the provision, "The agreement and memorandum is to be in effect for ninety days from above date and at the end of this period Franchot Tone *is to receive* $14,000.00 . . . or has the right to demand *his* above property from William Seymour . . ." (italics added), did not say Tone was *entitled* to receive the $14,000 at the expiration of the ninety-day period, or that he had a right to demand it, but that he "is to receive" that amount or he had the right to demand *his* property back. The use of the word "his" in this connection is inconsistent with appellant's contention that title passed. On the contrary, it indicated that the parties intended that title should remain in Tone unless Tone received $14,000.

Furthermore, the provision that, ". . . all profits above the amount of $14,000.00 is to be divided between Franchot Tone and William Seymour equally," did not indicate that any present sale was contemplated at the time of entering into the transaction, but it did indicate an intention that the jewel was to remain the property of Tone. The fact that Tone was to receive half of the profits is opposed to appellant's contention that Tone parted with title.

■ Under the terms of the agreement, appellant assumed the entire risk for damage or loss. Appellant urges that, "It is

an almost invariable rule that ownership and the unconditional assumption of all risk for loss or injury go hand in hand.'' Intention of the parties controls as to the one upon whom risk shall be placed and, in the absence of an express agreement, risk generally follows ownership. Section 1742 of the Civil Code reads, ''Unless otherwise agreed, . . . when the property therein is transferred to the buyer the goods are at the buyer's risk. . . .'' There was, however, a provision in the agreement that the risk should be on appellant and the fact that the risk was assumed expressly by appellant signified an intention that it should not follow the general rule.

In *People* v. *Baker*, (1923) 64 Cal. App. 336 [221 Pac. 654], at page 341, it was stated: ''One of the principal tests by which to determine whether any particular contract creates a mere bailment or is a sale on credit is this: Was there a binding promise on the part of the person to whom the possession was given to pay for the article? If there was such a promise, then the contract is ordinarily held to be one of sale and not of bailment; and, conversely, if there was no such binding promise to purchase on terms agreed upon, then the transaction is ordinarily held not to be a sale.'' An analysis of the instrument which appellant claims was a sale or return agreement, reveals no binding promise on his part to pay for the jewel. It was agreed that Tone should receive $14,000 before title would pass but there was no binding promise that a sale would be made or that appellant would pay the $14,000.

Appellant further states that the first part of the agreement, providing that the jewel was the sole property of Tone and that appellant received it for inspection only with the understanding that title was to remain in Tone, merely described the ''right of the parties as between each other'' and that it is the ''premise on which the transaction proper rests''; that the next two sentences (relating to title not passing until $14,000 was paid, sharing profits and the assumption of risk), taken in connection with the stipulation that the agreement should remain in effect for ninety days, make a sale on a condition subsequent in the form of a contract of sale or return. One of the most important rules in interpreting contracts is that the whole contract is to be taken together, so as to give effect to every part. (Civ. Code, § 1641; Code Civ. Proc., § 1858.) As was stated in *Monroe*

v. *Grolier Society*, (1929) 208 Cal. 447 [281 Pac. 604, 65 A. L. R. 989], at page 451: " 'A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument, and° not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part, as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect.' " (13 C. J. 525, § 486.) Considering the present contract as a whole, such contention that it was a sale on a condition subsequent cannot be sustained.

■ Appellant contends further that title passes in transactions of this kind according to custom and usage in the jewelry business. He testified, ''The interpretation I have is that it is the same type of memorandum . . . that jewelers use. It is a universal memorandum all over the United States, whereby jewelers take merchandise from other jewelers, and if they do not demand it back in a specified time the jeweler then has possession . . . and ownership, and owes the party who owned the piece at that time the amount of money for the piece. This is a regular jewelers memorandum.''

A usage is operative upon parties to a transaction where and only where they manifest an assent to each other that it shall be operative, or where one· of the parties knows or has reason to know that the other party intends to be governed by the usage, or where the usage exists in such transactions and is generally known by persons under similar circumstances. (Rest., Contracts, § 247.) ■ It does not appear that either party manifested an intention to be governed by this alleged usage. No evidence was introduced to show that the alleged usage was so generally known that Tone would be charged with knowledge thereof and no evidence, except appellant's testimony, was offered to prove that there was in fact such a usage. Tone is an actor and, while he testified that he had purchased jewelry on various occasions, it does not follow that he was familiar with the custom of dealers in the jewelry business. In *Latta* v. *Da Roza*, (1929) 100 Cal. App. 606 [280 Pac. 711, 281 Pac. 655], it was stated at page 609, ''To bind one who is not engaged in the trade or occupation which employs the usage relied upon, proof of his actual knowledge of the usage is necessary, unless it is so commonly accepted that the public is presumed to recognize its exist-

ence." The trial court may well have concluded that the evidence was insufficient, not only to establish knowledge on the part of Tone, but to establish such a custom.

Appellant asserts that the instrument was clear and unambiguous in its terms; that the respondent used admissions, made by appellant in the letter to Mrs. Flatto, to show that the written agreement was not what it purported to be and that the corpus delicti may not thus be established.

█ It is well settled, as appellant contends, that the corpus delicti must be proved by evidence outside of the extrajudicial admissions of defendant. (*People* v. *Hudson*, (1934) 139 Cal. App. 543, 544 [34 P. (2d) 741].) █ It is also well settled that slight or prima facie proof of the corpus delicti is all that is necessary. (*People* v. *McWilliams*, (1931) 117 Cal. App. 732, 736 [4 P. (2d) 601] ; *People* v. *Bollinger*, (1925) 196 Cal. 191, 200 [237 Pac. 25].) It may be proved by circumstances shown in evidence or by inferences drawn from facts shown. (*People* v. *Vicunia*, (1930) 105 Cal. App. 145, 147 [286 Pac. 1061].) The rule requiring proof of the corpus delicti before the admission of extrajudicial confessions is thus stated in 8 Cal. Jur., section 303, page 235 : "To authorize the reception and consideration . . . of evidence of an extrajudicial confession or admission of a defendant, the people need not establish the corpus delicti by proof of the clear and convincing character required to support a conviction. It is sufficient if there is some proof, or prima facie proof, or even slight proof of the corpus delicti. The uncorroborated testimony of a witness is sufficient to establish the corpus delicti for this purpose . . . " It follows that Tone's testimony, having been introduced into evidence prior to the letter, sufficiently established the corpus delicti. Irrespective of this fact, there would have been no error since order of proof is discretionary with the court and, where corpus delicti is finally established, a mere variation in the order of proof cannot be said to result in any prejudice to the defendant's rights. (*People* v. *Clark*, (1925) 70 Cal. App. 531, 546 [233 Pac. 980] ; 8 Cal. Jur., § 303, p. 235.)

█ Appellant contends that the respondent introduced extrinsic evidence in an attempt to prove that the contract was other than its language legally implied. There is no merit in this contention. An examination of the record fails to disclose that any evidence was either offered or received for the purpose of varying the terms of the contract. Under the

circumstances here presented it was proper, in construing the contract, for the court to look to the language employed, the subject matter, and the surrounding circumstances. (*Palma* v. *Leslie*, (1935) 6 Cal. App. (2d) 702, 707 [45 P. (2d) 391].)

Appellant argues that one year and three months having elapsed between the date of the transaction and Tone's demand for the jewel, during which time appellant had given no notice of rejection, the sale became complete. Since, as above shown, the parties did not intend their agreement to be one of sale at the time of the transaction, the mere passage of time would not operate to transfer title.

Appellant states as one of his grounds of appeal that the court was without jurisdiction of the offense charged; however, this point was not urged in his briefs and it is not clear in what particular he challenges its jurisdiction. His acts, allegedly constituting the crime of embezzlement, were committed in Los Angeles County; clearly, the superior court of such county would have jurisdiction.

A further point urged by appellant is that under section 511 of the Penal Code it is a sufficient defense that property is appropriated openly and avowedly and under a claim of title preferred in good faith, even though such claim is untenable. In view of the evidence adduced at the trial and the construction placed upon the contract by the trial court, it appears that appellant did not act in good faith and, therefore, was not entitled to the benefits of that code provision. It was stated in *Payne* v. *Pathe Studios, Inc.*, (1935) 6 Cal. App. (2d) 136 [44 P. (2d) 598], at page 140, ''And if the construction placed upon it [the contract] by the trial court . . . is reasonable and sustainable by the language of the instrument, and appears to be consistent with the true intent of the parties, an appellate court will not substitute another interpretation though it seem equally tenable.''

At the trial Tone and appellant disagreed as to what was intended by that portion of the agreement which provided that it was to remain in effect for ninety days and at the end of that time Tone was to receive $14,000 or had the right to demand his property from appellant. Tone testified that he understood it to mean that appellant had ninety days in which to sell the ''stone'' and that he (Tone) could not demand it back before ninety days but, upon the expiration of that time, he had the right to demand either the stone or

$14,000. Appellant testified that he understood it to mean if Tone did not demand the jewel back within ninety days after the date of the agreement, the jewel became his property and he became indebted to Tone for $14,000. The conduct of appellant in making the several false statements to Tone and his attorney, regarding the prospective purchasers, the whereabouts of the jewel, the sale or pledge thereof to Mrs. Flatto, the amounts borrowed and the sums repaid thereon, is not at all in harmony with the actions of one who believed the contract had the meaning which appellant ascribed to it at the trial. If appellant did in good faith understand that he had title to the jewel under the terms of the contract, and believed that he acted innocently in delivering the jewel to Mrs. Flatto, it is hardly to be supposed that he would seek to conceal the transaction as defendant did by resorting to such extensive fiction when inquiries were directed to him concerning the jewel.

For the foregoing reasons, appellant's act in selling or pledging the jewel to Mrs. Flatto was sufficient to warrant the trial court in finding that he converted it to his own use in a manner and for a purpose inconsistent with the owner's rights and inconsistent with the nature and purposes of the contract, and, in so doing, he was guilty as charged.

If the circumstances shown in evidence reasonably justify the finding of the trial court that defendant was guilty, a reviewing court is not warranted in disturbing the finding, even though those circumstances also might be reconciled reasonably with the innocence of defendant. (*People* v. *Newland*, (1940) 15 Cal. (2d) 678, 681 [104 P. (2d) 778].)

Defendant's motion for a new trial was denied by the trial court, probation was granted and imposition of sentence was suspended.

The order denying the motion for a new trial is affirmed.

Schauer, P. J., and Bishop, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 28, 1942.