[Crim. No. 7554. Second Dist., Div. Two. Aug. 17, 1961.]

THE PEOPLE, Respondent, v. DENYS JACQULYN
BURNHAM, Appellant.

Denys Jacqulyn Burnham, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant was charged in Count I of an amended information with violation of section 556, Insurance Code, which provides: "It is unlawful to (a) Present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance. (b) Prepare, make, or subscribe any writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim." Violation of the section is declared a felony. Count II charges a like offense but defendant was acquitted of same. Counts III and IV each charged petty theft with a prior conviction of a felony, to wit, forgery (Pen. Code, §§ 484, 667), in that on or about January 15, 1959, defendant wilfully, unlawfully and feloniously took $129.66, and on or about July 8, 1959, the sum of $86.44, the personal property of Fireman's Fund Insurance Group.

Defendant was found guilty on each of counts I, III and IV as charged and was sentenced to the county jail for a term of six months, the sentences to run concurrently. She appeals from the judgment and from the order denying her motion for a new trial. The record fails to show that a motion for a new trial was made, nor does it reflect such an order; therefore the attempted appeal therefrom must be dismissed. (*People* v. *Akers*, 143 Cal.App.2d 224, 225 [299 P.2d 398].)

Appellant contends that the evidence does not support a finding of any fraud; that each count required proof beyond a reasonable doubt that the element of fraud existed; and that in the absence of such proof the corpus delicti was not established and, therefore, certain statements of appellant were improperly admitted.

On December 9, 1958, the insurer, Fireman's Fund Insurance Group, received from Glen O. Sadler, doing business as the Park Pantry, an employer's report of an industrial accident and set up a claim file in appellant's name. Appellant was employed as a cook at the Park Pantry at the time of the injury on November 18. An Insured's Claim for Compensation, dated January 6, 1959, was received by the insurer shortly after the date thereof. It contained, *inter alia,* these printed questions and the answers thereto in the handwriting

of appellant: "Have you returned to work?" "No." "If not, when will you probably be able to return?" "Do not know." The form concluded: "Based on the foregoing facts, which I certify are true, I hereby make claim for compensation." It was signed by appellant.

In reliance upon these representations the insurer paid to appellant compensation disability benefits of $43.22 per week for the period November 19, 1958 through July 9, 1959. Had the aforesaid questions been answered in the affirmative, the claims drafts for these payments would not have been issued. Mr. Ulrich, the claims adjustor, testified that at no time after the opening of this file about December 9, 1958, did he receive a communication from appellant advising that she had returned to work. He received a letter from her dated February 21, 1959, which read: "Please note that I have had to move to a place of lower rent. My new address is 525½ East 19th Street, Long Beach, California."

Appellant had in fact gone to work as a cook at Flo's Broiler during the first week of December 1958. She was employed there six days per week for the next seven weeks. She thereafter remained in the employ of Flo's Broiler to mid-July, although not continuously six days per week. She was paid weekly for this employment, receiving her last check from that employer on July 22, 1959, for the week ending on the previous Friday.

On June 16, 1960, Robert Sweet, an investigator for the Los Angeles County District Attorney's office, in the presence of another member of that office, had a conversation with appellant during which appellant was asked "whether she knew she was not entitled to draw Workmen's Compensation and be employed at the same time and she stated that she did know this. I asked her why she did it. She said that at the time she was making car payments and needed the money for living expenses." It is appellant's contention that these extrajudicial statements were improperly received in evidence because the corpus delicti of the crimes had not been proved.

In her testimony appellant denied making the above admission to Mr. Sweet. She testified that she signed the claim dated January 6 with the understanding that this was a duplicate of a form she had signed in November 1958, shortly after the injury; that the first form was lost and she was asked to make a new one; that when she filled out the form she understood that she was to answer with the facts as of November;

that she had no intent of deceiving or defrauding any insurance company or employer.

The basis of appellant's argument upon appeal that the evidence is insufficient to prove fraud is that the question "Have you returned to work?" is ambiguous and is subject to two interpretations, namely, "Returned to any work at all," or "Return to the work which the injury occurred upon." Appellant argues that a "person filling out a claim of this nature would naturally tend to think in terms of the employer who had employed and insured her." There is nothing in appellant's testimony to suggest that such was her understanding of the questionnaire at the time she signed it, although such an argument was made by her counsel in the trial court. Regardless of the theory, the gist of the defense is that appellant did not knowingly, or with intent to defraud, file a false claim.

■ With regard to the claim of insufficiency of the evidence "[t]he test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt." (*People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911].)

Nor is the corpus delicti required to be established beyond a reasonable doubt before the extrajudicial statements of a defendant may be received in evidence—prima facie proof of the corpus delicti being sufficient for that purpose. (*People* v. *Selby*, 198 Cal. 426, 438 [245 P. 426]; *People* v. *Davis*, 47 Cal.App.2d 331, 335 [117 P.2d 917]; *People* v. *Peters*, 149 Cal.App.2d 94, 98 [308 P.2d 42].) ■ It is "the settled rule that the corpus delicti must be proved by evidence outside of the extrajudicial declarations and statements of a defendant. [Citations.] ■ But it is likewise well settled that to authorize their reception in evidence and consideration by the jury, the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. [Citations.] ■ It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom. [Citations.] Direct or positive evidence is not essential. . . ." (*People* v. *Mehaffey*, 32 Cal.2d 535, 544-545 [197 P.2d 12].) See also *People* v. *Ives*, 17 Cal.2d 459, 463 [110 P.2d 408]; *People* v. *Cullen*, 37 Cal.2d 614, 624 [234 P.2d 1].

■ "Once prima facie proof of the corpus delicti is made, the extra-judicial statements, admissions, and confes-

sions of a defendant may be considered in determining whether all the elements of the crime have been established." (*People* v. *Duncan,* 51 Cal.2d 523, 528 [334 P.2d 858].)

The gravamen of the crimes charged is the intent to defraud. (*People* v. *Panagoit,* 25 Cal.App. 158, 162 [143 P. 70]; *People* v. *Grossman,* 28 Cal.App.2d 193, 202-203 [82 P.2d 76]; *People* v. *Burnett,* 21 Cal.App.2d 613, 618 [69 P.2d 1028]; *People* v. *Ashley,* 42 Cal.2d 246, 264 [267 P.2d 271].)

"As to appellant's intent, that too may be inferred, and 'is manifested by the circumstances connected with the offense . . .' (Pen. Code, § 21). This is so because intent is inherently difficult to prove by direct evidence. Therefore, the act itself, together with its surrounding circumstances must generally form the basis from which the intent of the actor may legitimately be inferred." (*People* v. *Proctor,* 169 Cal. App.2d 269, 279 [337 P.2d 93].) See also *People* v. *Turley,* 119 Cal.App.2d 632, 635 [259 P.2d 724]; *People* v. *Ross,* 105 Cal.App.2d 235, 237 [233 P.2d 68]; *People* v. *Armstrong,* 100 Cal.App.2d Supp. 852, 855 [224 P.2d 490].

Unquestionably the statements in the application filed by appellant were false. The application contained her certified statement that she had not returned to work and that she did not know when she would be able to return. She was in fact gainfully employed at the time she made these statements on January 6, as well as at the times she received the compensation payments of January 15 and July 8. The letter of February 21, advising of change of address, impliedly written in furtherance of her claim, indicated no change in her employment situation. The trial court could reasonably infer criminal intent from these circumstances and we are satisfied that this evidence, received prior to appellant's statements, sufficiently established the corpus delicti. "But irrespective of this fact of preliminary showing of the essential elements of the corpus delicti, 'there would have been no error since order of proof is discretionary with the court and, where corpus delicti is finally established, a mere variation in the order of proof cannot be said to result in any prejudice to the defendant's rights.' (*People* v. *Seymour, supra,* 54 Cal. App.2d 266, 275 [128 P.2d 726].)" (*People* v. *Mehaffey, supra,* 32 Cal.2d 535, 547-548.) See 48 Cal.Jur.2d section 371, page 373.

In discussing Section 101 of the Unemployment Insurance Act, the court in *People* v. *Haydon,* 106 Cal.App.2d 105 [234

P.2d 720], states that ''if a person wilfully or knowingly submits a claim, knowing it to be false, to the commission for the purpose of obtaining, increasing, reducing or defeating any benefit under the act, he necessarily does so to defraud. He evidences a purpose or willingness to present a false claim to effect the payment under the act and hence is presenting such claim with intent to defraud. [P. 107.] . . . A person making a false representation which in good faith he believes to be true is not doing so wilfully or knowingly. While he is not required to know the unlawfulness of the act to come within the definition of 'knowingly' or 'wilfully' he certainly must know that his statement is false or untrue.'' (P. 108.) (See also *People* v. *Ashley, supra,* 42 Cal.2d 246, 264.) Thus, appellant could show as a defense that she did not knowingly make the false statements, that they were made under a mistake of fact.[1]

''Whether [defendant] made these representations in good faith or whether [she] made them knowing they were false, or in reckless disregard of the truth and without information justifying the belief, were questions for the [trial court]. Intent cannot always be proved by direct evidence. Many times it has to be determined from a consideration of all the circumstances surrounding the doing of an act. . . . An intention to defraud is an essential element of the charged offenses, but such intention is inferable from all the facts of the case and need not be substantively proved. . . .'' (*People* v. *Henderson,* 79 Cal.App.2d 94, 117-118 [179 P.2d 406].)

On the question of knowledge or good faith on the part of appellant, the record presents the situation where the evidence on the part of the prosecution is circumstantial and is contradicted by direct evidence on the part of appellant. ■ However, ''[t]he law makes no distinction between direct and circumstantial evidence in the degree of proof required for conviction, but requires only that proof of guilt be established beyond a reasonable doubt by evidence of the one character or the other, or both. ■ Therefore, if the circumstances relied upon by the prosecution reasonably justify an inference of guilt, but an inference of innocence might also reasonably have been drawn, it was for the [court], as

[1]Penal Code, section 26, provides that ''All persons are capable of committing crimes except those belonging to the following classes: . . . Four: Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent.''

between these two inferences, to choose, and unless it is obvious that the evidence does not warrant the inference of guilt adopted by the [court], this court is powerless to interfere. And where the inference of guilt is negatived by positive and direct evidence in contradiction thereof, that too presents a question for the triers of fact, who may, if they conscientiously choose to do so, reject the direct and positive testimony opposed to that from which the inference of guilt may reasonably be drawn. In such a situation we may not substitute our own judgment of the value and effect of such evidence and the credibility of witnesses for that of the [trial court] unless we can say that the evidence is of such a character as to amount to no evidence at all.'' (*People* v. *Rubio,* 75 Cal.App.2d 697, 707 [171 P.2d 737].) The trial court could, and did, disbelieve appellant's testimony as to her intent. (*People* v. *Watts,* 126 Cal.App.2d 659, 663 [272 P.2d 814].)

The evidence is amply sufficient to warrant the inferences that appellant knowingly filed a false claim for the purpose of obtaining, and did obtain, the payments of January 15 and of July 8 with intent to defraud.

The purported appeal from the nonexistent order denying a new trial is dismissed.

Judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.